# IN THE SUPREME COURT OF TEXAS

══════════
No. 09-0340
══════════

INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, PETITIONER,

v.

CARMEN MURO, RESPONDENT

══════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS
══════════════════════════════════════════

**Argued March 3, 2011**

JUSTICE MEDINA delivered the opinion of the Court.

The Texas Workers' Compensation Act authorizes the award of lifetime income benefits to employees who lose certain body parts or suffer certain injuries in work-related accidents. The specific body parts and injuries that qualify an employee for this type of benefit are enumerated in section 408.161 of the act. *See* TEX. LAB. CODE § 408.161(a)(1)–(7). That enumeration includes, among others, "loss [or lost use] of both feet at or above the ankle." *Id*. § 408.161(a)(2), (b).

The question here concerns the standard for awarding lifetime income benefits under section 408.161. The employee in this case injured her hips, an injury and body part not enumerated in section 408.161. The hip injuries, however, affected the use of her feet to the extent that she could no longer work. Although her feet were not injured, per se, the employee was awarded lifetime income benefits because her hip injuries prevented her from continuing to work. The issue then is

whether the statute authorizes the award of lifetime benefits for injuries to body parts not enumerated in the statute, that is, whether the occurrence of one of the injuries identified in section 408.161 is a prerequisite to the award of lifetime benefits or whether other injuries that result in the employee's total and permanent incapacity, such as the hip injuries here, are enough.

Affirming the employee's award of lifetime income benefits, the court of appeals concluded that section 408.161 does not limit the award of lifetime income benefits to the specific injuries and body parts enumerated in the statute. 285 S.W.3d 524, 529 (Tex. App.—Dallas 2009). We conclude, however, that section 408.161 limits the award of lifetime benefits to the injuries enumerated therein and that an employee does not lose the use of a body part, within the statute's meaning, without some evidence of an injury to that body part. Because there is no evidence that the employee suffered one of the enumerated injuries in this case, we reverse and render.

I

Carmen Muro was seriously injured at work in 1996. She slipped and fell on a restroom floor, injuring her hips, lower back, right shoulder, and neck. Her injuries resulted in several surgeries, including the replacement of both her hips, a surgical repair of her right shoulder, and a cervical fusion. Complications with her left hip required additional surgery and the replacement of her first artificial hip. During this period, she received workers' compensation benefits. Muro eventually returned to her job in revenue management with her employer but left again in 1999 because she had difficulty walking from the parking lot and sitting at her desk. Unable to work, Muro sought lifetime income benefits.

2

The workers' compensation act enumerates certain catastrophic injuries for which an employee may recover lifetime income benefits. TEX. LAB. CODE § 408.161(a). The enumerated injuries include the loss of both feet, the loss of both hands, or the loss of a hand and a foot, among others. *Id.* § 408.161(a)(2), (3), (4). Muro asserted that she was entitled to lifetime benefits because her workplace accident caused her to lose the use of her right hand and both feet. Her employer's workers' compensation carrier, the Insurance Company of the State of Pennsylvania, disagreed. It refused to pay benefits beyond 401 weeks, asserting that Muro's circumstances did not qualify her for lifetime income. To resolve this dispute over benefits, the Texas Workers' Compensation Commission ("TWCC") scheduled a contested case hearing.

The TWCC hearing officer concluded that Muro was entitled to lifetime income benefits "based on the total and permanent loss of use of both feet at or above the ankle, or one foot at or above the ankle and one hand at or above the wrist." The TWCC appeals panel declined to reverse the hearing officer's decision, and the carrier, having exhausted the administrative process, appealed to the district court. *See id*. § 410.251 (authorizing judicial review).

In the district court, a jury heard testimony from several witnesses regarding the nature and extent of Muro's injuries and disability. Dr. Hooman Sedighi, a TWCC-appointed physician, testified that the injuries to, and surgeries on, Muro's hips and right shoulder limited her ability to use her legs and right arm and that these limitations likewise affected the use of her feet and right hand. Muro's feet and hands, however, were, according to the doctor, "functioning fine" and "near normal function." Dr. Sedighi's neurological exam revealed Muro's motor assessment to be "four-plus out of five in both upper and lower extremities without any focal myotomal deficits." He

3

explained that such testing utilizes a gradation that "goes from zero, meaning absolutely no motor strength whatsoever, to five, being normal." Dr. Sedighi further testified that pinprick or sensation testing indicated that Muro had normal sensation in her feet and hands. Although her feet and right hand were functional, Dr. Sedighi concluded that the injury to Muro's shoulder and hips had "diminished the ability to use both lower extremities and the right upper extremity" to the extent that she "would be considered totally disabled from any and all work."

Dr. Charles Crane, Muro's treating physician, also testified that Muro was completely disabled. In his opinion, the injury to Muro's hips had impaired the use of her feet to the extent that she could no longer obtain and retain employment requiring their use. Finally, Muro and her daughter testified about Muro's daily life, her limitations, and her inability to function without assistance.

The jury found that Muro had the "total and permanent loss of use of both feet at or above the ankle" and the "total and permanent loss of use of one foot at or above the ankle and one hand at or above the wrist." On this verdict, the district court rendered judgment for Muro, awarding her lifetime income benefits and attorney's fees. The insurance carrier appealed, and the court of appeals affirmed the district court's judgment. 285 S.W.3d 524. A petition for review to this Court followed, and we granted the petition to consider the requirements of section 408.161 and Muro's award of lifetime income benefits.

II

Lifetime income is the greatest income benefit a worker can receive under the workers' compensation act. In addition to lifetime income, the act provides for three lesser awards: temporary

4

income benefits, impairment income benefits, and supplemental income benefits. *See* TEX. LAB. CODE §§ 408.101, 408.121, 408.142, 408.161. These benefits accrue when a compensable injury causes a decrease in the employee's earnings and are generally paid weekly by the insurance carrier "as and when they accrue." *Id.* §§ 401.011(25), 408.081(b). A claimant's combined eligibility for temporary income benefits, impairment income benefits, and supplemental income benefits generally terminates 401 weeks after the date of injury. *Id*. § 408.083(a). But the 401-week limitation does not apply to lifetime income benefits, which, as the name implies, are payable until the injured employee's death. *Id*. § 408.161(a).

Section 408.161(a) provides for the payment of lifetime income benefits under seven circumstances:

(1) total and permanent loss of sight in both eyes;
(2) loss of both feet at or above the ankle;
(3) loss of both hands at or above the wrist;
(4) loss of one foot at or above the ankle and the loss of one hand at or above the wrist;
(5) an injury to the spine that results in permanent and complete paralysis of both arms, both legs, or one arm and one leg;
(6) a physically traumatic injury to the brain resulting in incurable insanity or imbecility; or
(7) third degree burns that cover at least 40 percent of the body and require grafting, or third degree burns covering the majority of either both hands or one hand and the face.

*Id*. § 408.161(a)(1)–(7). The statute equates the loss of the use of an enumerated body part with its loss, stating that "the total and permanent loss of use of a body part is the loss of that body part." *Id.* § 408.161(b). The statute does not elaborate further on what it means to lose the use of one of

5

the enumerated body parts, but we have written on the question under an earlier version of the workers' compensation act. *See Travelers Ins. Co. v. Seabolt*, 361 S.W.2d 204 (Tex. 1962).

III

In *Seabolt*, the Court "sought to clarify the law regarding the total loss of use" of specific body parts identified in the workers' compensation act. *Angelina Cas. Co. v. Holt*, 362 S.W.2d 99, 100 (Tex. 1962). The act at that time used the term "member" instead of "body part," but otherwise equated the loss of use of a member or body part with its loss, as it does now. *See Seabolt*, 361 S.W.2d at 205 (citing former act).[1] *Seabolt* observed that the phrase "total loss of the use of a member" embraced two concepts, one narrow, relating to the absence of any utility in the body part, and the other "somewhat broader concept," recognizing that the member might possess some utility as a part of the body and yet "its condition be such as to prevent the workman from procuring and retaining employment requiring the use of the injured member." *Id*. at 205–06.

*Seabolt* then proposed the following definition:

> A total loss of the use of a member exists whenever by reason of injury, such member no longer possesses any substantial utility as a member of the body, or the condition of the injured member is such that the workman cannot procure and retain employment requiring the use of the member.

---

[1] The former act provided that for purposes of lifetime benefits "the total and permanent loss of use of a member shall be considered to be the total and permanent loss of the member" and that the "total loss of use" of a member is "equivalent to" and is to "draw the same compensation" as the "total and permanent loss of such member." TEX. REV. CIV. STAT. ANN. art. 8306, §§ 10(b), 11a (repealed by Acts 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(7)–(9), 1989 Tex. Gen. Laws 114). The act now provides that the "total and permanent loss of use of a body part is the loss of that body part." TEX. LAB. CODE § 408.161(b).

6

*Id.* at 206.[2]  The insurance carrier points out that this definition uses the adjective "injured" to describe the affected member, indicating that the enumerated member must itself be injured before a loss of use can occur.  The carrier submits that an employee therefore does not lose the use of an enumerated body part without some evidence of an injury to it.

The carrier requested a jury instruction on this principle, tendering the *Seabolt* definition, but the court refused, submitting the following instruction instead: "'Loss of use' means the condition of the body part is such that the Defendant cannot get and keep employment requiring the use of that body part.  Loss of use does not require amputation."  Because the court's charge omitted any requirement of injury to a statutory body part, the carrier complains that Muro was able to recover lifetime benefits for the total loss of use of her feet and her right hand, even though these body parts remained uninjured and functional.

Muro responds that the statute does not expressly require evidence of an injury to a statutory body part but rather only the "total and permanent loss of use" of such body part.  *See* TEX. LAB. CODE § 408.161(b).  Muro submits that any injury that results in the "total and permanent loss of use" of a statutory body part is enough.  Therefore, evidence of her hip and shoulder injuries and their effect on her feet and right hand are enough to satisfy the statute.

The court of appeals agreed that Muro did not need evidence of an injury to her right hand and feet to support the jury's finding of lost use.  285 S.W.3d at 529.  Citing five cases from other courts of appeals, the court concluded "that injury to one part of the body can support a loss of use

---

[2] This definition was subsequently incorporated into the Texas Pattern Jury Charges.  *See* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES–WORKMEN'S COMPENSATION PJC 26.04 (1970).

finding for another part of the body, bringing the injury within the category of injuries encompassed by the [lifetime income benefits] statute." *Id*. (citing *Galindo v. Old Republic Ins. Co.*, 146 S.W.3d 755, 760 (Tex. App.—El Paso 2004, pet. denied); *Hartford Underwriters Ins. Co. v. Burdine*, 34 S.W.3d 700,705-06 (Tex. App.—Fort Worth 2000, no pet.); *Second Injury Fund of the State of Tex. v. Avon*, 985 S.W.2d 93, 95 (Tex. App.—Eastland 1998, pet. denied); *Tex. Gen. Indem. Co. v. Martin*, 836 S.W.2d 636, 638 (Tex. App.—Tyler 1992, no writ); *Tex. Employers' Ins. Ass'n v. Gutierrez*, 795 S.W.2d 5, 6 (Tex. App.—El Paso 1990, writ denied)). In short, the court of appeals concluded that Muro was entitled to lifetime income benefits because injuries to her hips and right shoulder affected her ability to use her feet and right hand to the extent that she could not continue to work.

A

Four of the five cases on which the court of appeals relies were decided under article 8306 of the Texas Revised Civil Statutes, an earlier version of the workers' compensation act. *See* TEX. REV. CIV. STAT. ANN. art. 8306 (repealed by Acts 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01, 1989 Tex. Gen. Laws 114). The Legislature repealed that version of the act when it reformed the workers' compensation system in 1989. These reforms created a new regulatory agency, benefits structure, and dispute resolution process. *See generally Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 510–16 (Tex. 1995) (discussing changes). The changes were subsequently codified in Title 5 of the Texas Labor Code. Act of May 22, 1993, 73rd Leg., R.S., ch. 269 § 1, 1993 Tex. Gen. Laws 987, 1173.

Injuries occurring before January 1, 1991 (the effective date of the reform bill), are commonly referred to as "old-law cases." Injuries occurring on or after January 1, 1991, are commonly referred to as "new-law cases." Old-law cases can be useful in understanding the new act, but their relevance to any particular provision requires a careful comparison of the old and new law.

Although the new law significantly changed the workers' compensation system, it did not wholly replace the old law's treatment of lifetime income benefits. The old law enumerated six injuries for which lifetime income benefits were to be paid, describing the enumerated injuries as conclusively establishing a worker's total and permanent incapacity. *See* TEX. REV. CIV. STAT. ANN. art. 8306, §§ 10(b), 11a (repealed by Acts 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(7)–(9), 1989 Tex. Gen. Laws 114). Section 408.161 of the new law incorporates these same six injuries, adding serious burns as a seventh specific injury qualifying for lifetime benefits. TEX. LAB. CODE § 408.161(a)(1)–(7). Section 408.161, however, no longer expressly equates the enumerated injuries with total and permanent incapacity. *Id.* § 408.161. But, under either version of the act, lifetime benefits are payable for certain statutory injuries, such as the loss of both feet, the loss of both hands, or a combination of the two. *Compare* TEX. LAB. CODE § 408.161(a)(2)–(4), *with* TEX. REV. CIV. STAT. ANN. art. 8306, § 11a(2)–(4) (repealed). And as already mentioned, both versions equate the total and permanent loss of use of an enumerated body part with its loss. *Compare* TEX. LAB. CODE § 408.161(b), *with* TEX. REV. CIV. STAT. ANN. art. 8306, §§ 10(b), 11a (repealed).[3]

---

[3] *See supra* note 1.

The respective laws differ, however, in their approach to other serious injuries, resulting in a workers' total incapacity. The new law does not directly address any other serious injuries not enumerated in the act, while the old law does address the subject, but does so inconsistently.

The old law indicates that the six enumerated injuries are the exclusive means of proving a worker's entitlement to lifetime benefits, but the old law also states that the enumeration is a non-exclusive list. For example, section 10(b) provides that, if the claimant's injury is "one of the six (6) enumerated in Section 11a," the claimant is entitled to lifetime benefits; however, "in no other case of total and permanent incapacity" can the claimant recover benefits for a period in excess of 401 weeks from the date of injury. TEX. REV. CIV. STAT. ANN. art. 8306, § 10(b) (repealed). Section 10(b) thus indicates that the nature of the injury (its enumeration in the statute) is more important than the extent of the incapacity resulting from the injury.

Section 11a, however, indicates the opposite. After enumerating the six injuries, that section concludes with the following paragraph, commonly referred to as the "other loss" clause:

> The above enumeration is not to be taken as exclusive but in all other cases the burden of proof shall be on the claimant to prove that his injuries have resulted in permanent, total incapacity.

*Id.* art. 8306, § 11a (repealed). In contrast to section 10(b), the "other loss" clause focuses on the nature of the worker's incapacity, rather than the injury itself, suggesting that the injury's nature (its enumeration in the statute) is less important than the degree of incapacity or disability the injury produces. Clearly, the old law is conflicted on the purpose served by its six enumerated injuries. Given this inconsistency in the old law, a number of courts opted to apply section 11a's "other loss" clause to extend lifetime benefits to workers whose non-enumerated injuries resulted in total and

permanent incapacity.  *See, e.g., City of Del Rio v. Contreras*, 900 S.W.2d 809, 810–11 (Tex. App.—San Antonio 1995, pet. denied) (holding the old law to be "at best ambiguous" on the issue of exclusivity and resolving the ambiguity in the worker's favor).

Most of the court of appeals' case authority here is premised on this application of the "other loss" clause.  *See* 285 S.W.3d at 529 (citing *Avon*, 985 S.W.2d at 95 (jury's finding of total and permanent loss of use of both legs supports recovery of lifetime income under the provision for the "loss of both feet at or above the ankle"); *Martin*, 836 S.W.2d at 638 (total and permanent loss of use of a leg "necessarily inflicts" the loss of use of the attached foot at or above the ankle); *Gutierrez*, 795 S.W.2d at 6 (finding of the total loss of use of a leg encompasses the loss of a foot at or above the ankle)).  The "other loss" clause, however, did not survive the act's reformation. Because this provision is not part of the current act, the old-law cases that apply it are neither relevant nor useful to our understanding of section 408.161.

B

The court of appeals does cite one new-law case that applies section 408.161 under circumstances similar to the present case.  *See Galindo*, 146 S.W.3d 755.  In *Galindo*, the worker sought an award of lifetime income benefits after an exposure to sulfur dioxide gas rendered him a "pulmonary invalid."  *Galindo*, 146 S.W.3d at 759–60.  Pulmonary injuries are not mentioned in section 408.161.  *See* TEX. LAB. CODE § 408.161(a)(1)–(7) (enumerating the seven injuries that qualify for lifetime benefits).  Because the worker's injury was not one enumerated in the statute, the trial court summarily denied the worker's claim.  The court of appeals, however, reversed the summary judgment, concluding that the worker's pulmonary injury raised fact questions about

11

whether the worker had permanently lost the use of both hands, or both feet, "or even all four extremities." *Galindo*, 146 S.W.3d at 760. The *Galindo* court thus focused on the workers' total and permanent incapacity rather than the nature of the injury producing that incapacity, just as old-law cases had done when applying the "other loss" clause. Similarly, the court here focuses on Muro's incapacity or disability and, as in *Galindo*, that disability stems from a non-statutory injury or impairment.

Concepts of "impairment" and "disability" are not interchangeable under the new law, however. The act defines "impairment" as "any anatomic or functional abnormality or loss existing after maximum medical improvement that results from a compensable injury and is reasonably presumed to be permanent." TEX. LAB. CODE § 401.011(23). "Disability," on the other hand, is defined as "the inability because of a compensable injury to obtain and retain employment at wages equivalent to the preinjury wage." *Id.* § 401.011(16). The injuries enumerated in section 408.161 all result in impairments, but whether they also result in disabilities will "depend upon the nature of the employee's pre-injury job." *Mid-Century Ins. Co. v. Tex. Workers' Comp. Comm'n*, 187 S.W.3d 754, 760 (Tex. App.—Austin 2006, no pet.). Section 408.161 therefore defines lifetime-income-benefits eligibility in terms of specific impairments rather than general disabilities. *See id.* (noting that § 408.161 defines eligibility without regard to the existence of a disability); *cf. Consol. Underwriters v. Langley*, 170 S.W.2d 463, 464 (Tex. 1943) (noting that "[w]here injury results to a particular member of the body, compensation for the loss of which is specifically provided by statute, the liability of the insurer is limited to that amount, even though the loss of or injury to that particular member actually results in total permanent incapacity of the employee to labor").

The statute merely provides that lifetime income benefits are to be paid for the seven injuries or conditions enumerated in section 408.161. *Compare* TEX. LAB. CODE § 408.161*, with* TEX. REV. CIV. STAT. ANN. art. 8306, § 11a (repealed). Had the Legislature intended for total and permanent incapacity to serve generally as the basis for the award of lifetime income benefits under the new law, it would have retained the old law's "other loss" clause or replaced the specific injuries and conditions enumerated in section 408.161 with a disability system focused on the worker's inability to work. Because the Legislature chose both to retain the enumerated injuries and to repeal the "other loss" clause, it clearly did not intend to continue the broader application of lifetime income benefits formerly recognized by some courts of appeals under the old-law's "other loss" clause.

C

The evidence in this case indicates that physical injuries to Muro's hips, shoulder, back, and neck limited or impaired her ability to use her feet and right hand. There was no evidence, however, that these physical injuries extended to the hand or feet, either directly or indirectly as was the case in *Burdine*, another decision on which the court of appeals relies. *See* 285 S.W.3d at 529 (citing *Burdine*, 34 S.W.3d at 707).

In *Burdine*, the worker's injury involved her back and "the associated nerve roots" which extended "down the legs into the feet." *Burdine*, 34 S.W.3d at 706. The treating physician testified that the injury had caused a "muscular malfunction" rendering the worker unable to lift her feet, a condition referred to as "footdrop." *Id*. The physician further testified that the worker was totally disabled and that the loss of her legs and feet at or above the ankles was a permanent condition for which he had prescribed an electric wheelchair. *Id*. at 706–07. The injury in *Burdine* therefore

extended to the worker's feet and resulted in her inability to "get and keep employment requiring [their] use." *Burdine*, 34 S.W.3d at 707 (quoting *Seabolt*'s definition of "total loss of use"). This evidence of an injury to a body part enumerated in the statute distinguishes *Burdine* from the present case.[4]

Under the old law, we said that an injury to one body part or system could extend to and affect another body part or system and thereby amplify the benefits otherwise due an injured worker. *Tex. Employers' Ins. Ass'n v. Wilson*, 522 S.W.2d 192, 194 (Tex. 1975); *Travelers Ins. Co. v. Marmolejo*, 383 S.W.2d 380, 381–82 (Tex. 1964). But Muro does not contend that her injuries extended to her feet or right hand. The expert testimony confirms that they did not. Muro urges instead that injuries to her hips, back, neck, and shoulder were sufficient to support the underlying award of lifetime income benefits. We cannot agree.

The Legislature has limited the award of lifetime income benefits to the specific injuries and body parts enumerated in section 408.161; nothing in the statute authorizes the substitution of other injuries or body parts for those enumerated. TEX. LAB. CODE § 408.161. The injury to the statutory body part may be direct or indirect, as in *Burdine*, but the injury must extend to and impair the statutory body part itself to implicate section 408.161. Because there is no contention here that Muro's feet and right hand ceased to possess "any substantial utility as a member of the body"[5] and no evidence of injury to these body parts that prevented her from procuring and retaining

---

[4] *Burdine* is also an old-law case, and the result in the case might also be justified under the former act's "other loss" clause. TEX. REV. CIV. STAT. ANN. art. 8306, § 11a (repealed).

[5] *Seabolt* recognized this as an alternative definition for the "total loss of use of a member." The Division of Workers' Compensation adjudicated the "substantial utility" theory of recovery against Muro, and it is not an issue in this appeal. *See Seabolt*, 361 S.W.2d at 205–06.

employment requiring their use, we conclude that Muro is not entitled to the award of lifetime income benefits. *See Seabolt*, 361 S.W.2d at 206.

### III

The insurance carrier also complains about the award of attorney's fees. An insurance carrier that seeks judicial review of a TWCC appeals panel's final decision regarding, among other things, benefits eligibility is liable for reasonable and necessary attorney's fees incurred by a prevailing claimant in the appeal. TEX. LAB. CODE § 408.221(c). Muro was accordingly awarded attorney's fees because she prevailed in the district court, and the court of appeals affirmed that award. Our determination that Muro is not entitled to lifetime income benefits under section 408.161 requires that we also reverse her award of attorney's fees.

* * *

The court of appeals' judgment is reversed and judgment is rendered denying the claimant an award of lifetime income benefits under section 408.161 of the workers' compensation act.

_____
David M. Medina
Justice

Opinion Delivered: August 26, 2011

15