COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| DALLAS NATIONAL INSURANCE COMPANY, | § | No. 08-12-00189-CV |
| Appellant, | § | Appeal from the |
| | § | 346th District Court |
| v. | § | of El Paso County, Texas |
| GLORIA DE LA CRUZ, | § | (TC#2010-104) |
| Appellee. | | |

**O P I N I O N**

Dallas National Insurance Company ("DNIC") appeals from a trial court judgment reversing the decision of the Texas Department of Insurance, Division of Workers' Compensation. After a bench trial, the trial court found that Gloria De La Cruz, Appellee, was entitled to Lifetime Income Benefits ("LIBs") with an accrual date of February 18, 2004. In two issues on appeal, DNIC challenges the legal and factual sufficiency of the evidence to support the trial court's decision. For the reasons that follow, we will affirm.

**FACTUAL BACKGROUND**

Gloria De Le Cruz sustained a work related injury when, on February 18, 2004, she slipped and fell off a milk crate while working as a cook. As a result of the incident, De La Cruz

injured her lower back and left knee. De La Cruz sought treatment at Sierra Medical Center the following day.

De La Cruz went on to see a number of doctors, one of which was Dr. Ghiselli with El Paso Orthopedic Group. Dr. Ghiselli did an examination of her whole body and sent her for EMG tests. After a few weeks, Dr. Ghiselli referred her to Dr. Mansfield for treatment of her left knee.[1]

De La Cruz first saw Dr. Mansfield a few weeks after her fall. He examined her and then, in March 2004, he released her to return to light duty work. De La Cruz attempted light duty work for a single day. While back at work De La Cruz twisted her ankle. Since that date De La Cruz has not returned back to work nor has any doctor released her to return back to work.

In 2004, De La Cruz underwent physical therapy for her knee. She testified the physical therapy helped her knee improve "a little bit." However, De La Cruz continued to complain of pain in her lower back and lower extremities, including her left knee. Diagnostic tests revealed De La Cruz had multi-level herniated discs at L4-L5 and L5-S1. On May 2, 2005, De La Cruz underwent a "360 fusion at L4-L5 and L5-S1 with laminectomy and discectomy" with Dr. Pacheco to repair her back. As part of the surgery, Dr. Pacheco implanted a brace with three screws in De La Cruz's back for purposes of stability. De La Cruz was in a hard back brace for four months following the surgery.

In early 2006, De La Cruz continued to complain of back pain which radiated to her lower extremities. She went back to Dr. Mansfield who determined that she needed arthroscopic surgery on her left knee. Dr. Mansfield performed the surgery in February 2006.[2] However, the

---

[1] Dr. Ghiselli thought De La Cruz may need surgery on her left knee.

[2] In September 2008, Dr. Mansfield performed a second arthroscopic surgery on De La Cruz's left knee.

pain in De La Cruz's back and lower extremities continued. It was determined that De La Cruz suffered from complications related to her back surgery and went on to develop a condition known as "radiculopathy."[3] Radiculopathy is a condition which causes the damaged discs to efface the nerves in a person's spine. In De La Cruz, this condition caused her to suffer nerve injury which led to further symptoms such as pain and problems with the use of her legs and feet.

In 2007, De La Cruz entered a pain management program with Dr. Carlos Viesca. In July 2007, due to her pain, Dr. Viesca implanted a nerve stimulator. However, three months later the nerve stimulator was removed.

In August 2007, Dr. Robert Holladay performed a medical review. Dr. Holladay noted that De La Cruz's condition and compensable injury had still not resolved after three years. He opined that there was "not much that can be offered this claimant." He noted that there was no need for De La Cruz to be treated by several physicians, no need for further medical testing, surgical interventions, injections, or formal therapy sessions and that all that can be offered to De La Cruz is maintenance care for medication management.

At the time of trial, De La Cruz was forty-six-years' old. She testified the highest level of school she completed was junior high. She worked as a cashier at McDonald's before working as a cook at the restaurant where she was injured. She had been employed as a cook at that restaurant for nine years. According to De La Cruz, most of her employment has been in labor intensive-type positions.

At trial, De La Cruz testified that she suffers from depression and her doctors have told her to get out of the house and distract herself. She testified that on occasion she is able to visit friends, go to the park, and go shopping. However, she also stated that she is not able to drive.

---

[3] As a result of the back surgery, De La Cruz also sustained a ventral hernia which required surgery with mesh implantation. The hernia surgery was performed in October of 2005.

When she leaves the house her daughter or her husband drive her. De La Cruz further testified that when she goes on an outing such as shopping, she sits on a bench and waits while her daughter walks around.

## PROCEDURAL BACKGROUND

De La Cruz filed a Contested Case Hearing with the Texas Department of Insurance, Workers' Compensation Division ("the Division") to determine her entitlement to LIBS based on the loss of both feet at or above the ankles as of February 18, 2004. A benefit review conference was held on September 16, 2009 in an attempt to mediate a resolution of the disputed issue. However, such mediation was unsuccessful and on October 21, 2009, the Division held a contested case hearing. The Division's Findings of Fact stated in relevant part:

> 3. The evidence was insufficient to establish that the Claimant no longer possesses any substantial utility of and/or total and permanent loss of use of both feet at or above the ankle as a member of the body.
>
> 4. The evidence was insufficient to establish that the Claimant's condition is such that she cannot get and keep employment requiring the use of both feet at or above the ankle.

Accordingly, the Division concluded that De La Cruz was not entitled to LIBS based on the loss of both feet at or above the ankles. De La Cruz appealed to the Worker's Compensation Appeals Panel ("the Panel"), which affirmed the Division's ruling denying LIBS.

On January 12, 2010, De La Cruz filed suit in the 346th Judicial District Court seeking judicial review of the Division's ruling on LIBS. DNIC filed its Original Answer asserting a general denial. DNIC also sought to admit into evidence the Division's decision denying LIBS to De La Cruz.

The case was tried to the bench on December 12, 2011. After hearing all the evidence, the trial judge determined that De La Cruz's February 18, 2004 injury resulted in total loss of

both feet at or above the ankles. Accordingly, the trial court awarded LIBS to De La Cruz, reversing the Division's decision.

On February 3, 2012, DNIC filed a Motion for New Trial. DNIC also filed an Unopposed Motion to Vacate and Sign New Judgment on January 20, 2012, alleging that the judgment was signed in violation of Division rules. The court granted the Motion to Vacate on January 26, 2012 and re-issued the judgment pursuant to the motion on February 27, 2012. DNIC filed a second Motion for New Trial on March 13, 2012. DNIC's second motion was overruled by operation of law. DNIC timely appealed.

## DISCUSSION

On appeal, DNIC asserts two issues. In Issue One, DNIC argues that the trial court abused its discretion because the evidence is legally insufficient to prove that De La Cruz's injury fell into the narrow class of injuries or conditions enumerated by the Texas Workers' Compensation Act ("the Act") which entitle injured workers to receive Lifetime Income Benefits ("LIBS"). In Issue Two, DNIC contends that the trial court abused its discretion because the evidence is factually insufficient to support the same.

### *Legal and Factual Sufficiency Standards of Review*

A legal sufficiency or "no evidence" challenge will only be sustained on appeal if the record demonstrates: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *Dallas Nat. Ins. Co. v. Morales*, 394 S.W.3d 826, 831 (Tex.App.--El Paso 2012, no pet.); *Region XIX Service Center v. Banda*, 343 S.W.3d 480, 484 (Tex.App.--El Paso 2011, pet.

- 5 -

denied); *El Paso Independent School District v. Pabon*, 214 S.W.3d 37, 41 (Tex.App.--El Paso 2006, no pet.). When conducting a legal sufficiency review, we consider the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable juror could, and disregarding contrary evidence unless a reasonable juror could not. *City of Keller*, 168 S.W.3d at 810; *Region XIX Service Center*, 343 S.W.3d at 485. The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Kelle*r, 168 S.W.3d at 827.

When reviewing the factual sufficiency of evidence, we examine all the evidence and set aside a finding only if the evidence supporting the jury finding is so weak as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Under both a legal and factual sufficiency review, we are mindful that the jury, as fact finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819. We may not substitute our judgment for the fact finder's, even if we would reach a different answer on the evidence. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

### *Lifetime Income Benefits Under The Texas Workers' Compensation Act*

The Texas Workers' Compensation Act (the "Act") authorizes the award of Lifetime Income Benefits ("LIBS") to employees who lose certain body parts or suffer certain injuries in work-related accidents. *Insurance Company of State of Pennsylvania v. Muro*, 347 S.W.3d 268, 269 (Tex. 2011). Section 408.161 of the Act enumerates the specific body parts and injuries that qualify an employee for this type of benefit. *Id*., *citing* TEX.LAB.CODE ANN. § 408.161(a)(1)– (7)(West 2006). According to Section 408.161, LIBS are paid to an employee for:

    (1)  total and permanent loss of sight in both eyes;

(2) loss of both feet at or above the ankle;

(3) loss of both hands at or above the wrist;

(4) loss of one foot at or above the ankle and the loss of one hand at or above the wrist;

(5) an injury to the spine that results in permanent and complete paralysis of both arms, both legs, or one arm and one leg;

(6) a physically traumatic injury to the brain resulting in incurable insanity or imbecility; or

(7) third degree burns that cover at least 40 percent of the body and require grafting, or third degree burns covering the majority of either both hands or one hand and the face.

TEX.LAB.CODE ANN. § 408.161(a). Here, De La Cruz claimed her compensable injury fell under Subsection (a)(2), "loss [or lost use] of both feet at or above the ankle."[4] TEX.LAB.CODE ANN. § 408.161(a)(2), (b). DNIC disagreed.

On appeal, both parties rely on the Texas Supreme Court decision in *Insurance Co. of State of Pennsylvania v. Muro*. DNIC argues that De La Cruz failed to meet the burden of proof set out in *Muro*, and that she failed to establish a specific, statutory injury of the exclusive type found in Section 408.161. Instead, DNIC argues that De La Cruz proved, at most, a general incapacity, which cannot serve as a basis for an award of LIBS under the Supreme Court's holding in *Muro*. DNIC further contends that the *Muro* Court rejected a case relied on by De La Cruz, *Hartford Underwriters Ins. Co. v. Burdine*, 34 S.W.3d 700, 706-07 (Tex.App.--Fort Worth 2000, no pet.)(upholding an award of LIBS where the evidence showed that claimant's back injury resulted in radiculopathy causing damage to "associated nerve roots" which extended into the feet, and resulting in claimant's inability to use feet as a permanent condition and rendering claimant totally disabled).

---

[4] Subsection (b) of Section 408.161 provides that "[f]or purposes of Subsection (a), the total and permanent loss of use of a body part is the loss of that body part." TEX.LAB.CODE ANN. § 408.161(b).

In *Muro*, Carmen Muro, the claimant, injured her hips, lower back, right shoulder, and neck in a slip and fall accident at work. *Muro*, 347 S.W.3d at 270. Muro's injuries did not encompass a specific injury or body enumerated in Section 408.161. *Id.* However, Muro's hip injuries affected the use of her feet to the extent that she could no longer work. *Id.* at 270. According to Muro, after surgery and the replacement of her hips, she returned to work but had difficulty "walking from the parking lot and sitting at her desk." *Id.* Muro then stopped working and sought lifetime income benefits under the Texas Workers' Compensation Act "because her workplace accident caused her to lose the use of her right hand and both feet." *Id.* Although Muro's feet were not injured, per se, a jury found that she was entitled to lifetime income benefits. *Id.* at 269-70. The court of appeals affirmed the employee's award, concluding that Section 408.161 does not limit the award of lifetime income benefits to the specific injuries and body parts enumerated in the statute. *Id.*

The Texas Supreme Court reversed by denying lifetime income benefits. *Muro*, 347 S.W.3d at 277. The Court began its discussion by laying out the seven circumstances, or the seven enumerated body parts that Section 408.161(a) provides "for the payment of lifetime income benefits." *Id.* at 271. The Court raised the issue that the statute does not define "what it means to lose the use of one of the enumerated body parts . . . ." *Id.* at 271. Accordingly, the Court examined prior case law, particularly *Travelers Insurance Co. v. Seabolt*, 361 S.W.2d 204 (Tex. 1962), which defined the "total loss of the use of a member." *Id.* at 272. The Court explained that the earlier version of the Act used the term "member" instead of "body part." *Id.* The Court also discounted a number of cases from the courts of appeals used by the parties by classifying them as "old-law cases." *Id.* at 273. The Court explained that these "old-law cases" were decided under an "earlier version of the workers' compensation act," which included six

enumerated injuries and an all-encompassing "other loss" clause. *Muro,* 347 S.W.3d at 271-72. The Court then noted that the current version of the Act does not include the all-encompassing "other loss" clause. *Id*. at 272. Therefore, the Court determined that the cases that rely upon the "other loss" clause are "neither relevant nor useful." *Id*. at 274. The Court further explained that had the Texas Legislature wanted to include impairment or disability in the Act, it would have retained the "other loss" clause. *Id*. The Court concluded by stating that:

> The injury to the statutory body party may be direct or indirect, as in *Burdine*, but the injury must extend to and impair the statutory body part itself to implicate section 408.161.

*Muro,* 346 S.W.3d at 276. Finding no evidence the injuries extended to the claimant's feet or right hand, no contention that her feet or hand "ceased to possess 'any substantial utility as a member of the body,'" and "no evidence of injury to these body parts that prevented her from procuring and retaining employment requiring their use," the Court concluded the claimant was not entitled to LIBS.[5] *Id*. at 276.

DNIC contends De La Cruz did not offer any evidence of, or make a claim that she sustained a direct injury to her feet or ankles, and she has asserted, without substantiating evidence, that her lower back injury caused her to totally and permanently lose the use of both feet at or above the ankles. According to DNIC, this is contrary to the standards of proof required to show either a direct or indirect injury pursuant to Section 408.161 and *Muro*. DNIC asserts that as a result, there is legally insufficient evidence to support the trial court's determination that De La Cruz was entitled to LIBS. Similarly, DNIC argues there is factually insufficient evidence to support the award of LIBS because De La Cruz did not offer any evidence that the condition of her feet prohibited her ability to work in the future and the law

---

[5] We note that rather than rejecting *Burdine*, as DNIC contends, the Supreme Court distinguished it: "This evidence of an injury to a body part enumerated in the statute distinguishes *Burdine* from the present case." Muro, 347 S.W.3d at 276.

clearly requires that she have a total loss of the use of her feet at or above the ankles, and she must have incurred damage or harm to the physical structure of her body.

### *Legally and Factually Sufficient Evidence Exists to Support the Finding in Favor of LIBS*

A review of the evidence presented at trial supports the trial court's determination that De La Cruz was entitled to LIBS. De La Cruz was diagnosed with multi-level herniated discs at L4-L5 and L5-S1 requiring her to undergo back surgery.[6] As early as 2006, the medial records show that doctors saw signs of radiculopathy.[7] For instance, on February 24, 2006, Dr. Michael Boone assigned De La Cruz a 30 percent permanent impairment rating which include impairment for radiculopathy. In addition, in March 2006, DNIC's peer review physician, Dr. John Obermiller, reviewed De La Cruz's impairment rating assessment at DNIC's request. Dr. Obermiller noted that objectively, De La Cruz did in fact have radiculopathy, agreeing that she was entitled to permanent rating for such condition under the AMA Guides to the Evaluation of Impairment. On June 19, 2006, Dr. Thomas Dilger noted that De La Cruz suffered from "dermatomal loss on right side of L2 and left side L3 [sic]-Sl", that the "L5 vertebral segment is unstable," and that she walked with a antalgic gait and ambulates with a cane. A notation in early 2007 from Dr. Carlos Viesca states that De La Cruz was having back pain radiating into her toes. On November 8, 2007, Dr. Viesca confirmed that De La Cruz was suffering from radiculopathy.

Further, with respect to the extent of De La Cruz's impairment or injury, on September 5, 2008, Dr. Mansfield stated that De La Cruz was permanently disabled. Similarly, on October 14, 2009, Dr. Boone opined that De La Cruz was disabled and 100 percent incapable of gainful

---

[6] It is undisputed that De La Cruz suffered a work related injury on February 18, 2004 in which she injured her lower back and left knee.

[7] On January 10, 2006, Dr. Curtis Spier noted that it was unlikely that De La Cruz would return to work in the near future in any capacity.

employment for the present and foreseeable furture. On January 14, 2009, Dr. James Hood, the Commission appointed doctor, noted the absence of ankle reflexes bilaterally, finding they "give-way in all groups in both legs." Dr. Hood also stated that De La Cruz was "totally disabled from any gainful employment" and that "[i]t is unlikely in medical probability that any type of additional procedure would be of much benefit in returning her to the workplace." Likewise, on June 1, 2010, Dr. Karl Erwin, DNIC's retained physician, stated "for all practical purposes, she is unemployable." Finally, on February 10, 2011, Dr. Hood opined De La Cruz suffered from "severe epidural scarring along the left L5 and S1 nerve roots," and she was completely unable to work, and her inability to work in any capacity was permanent.

Based on the foregoing evidence, considering the evidence and inferences supporting the trial court's finding, and disregarding all evidence and inferences to the contrary, we conclude more than a scintilla of evidence exists to support the trial court's finding that De La Cruz was entitled to LIBS. DNIC's legal sufficiency challenge is overruled. *See State Office of Risk Management v. Escalante*, 162 S.W.3d 619, 624 (Tex.App.--El Paso 2005, pet. dism'd).

Likewise, a review of all of the evidence presented demonstrates that while there are certainly contradictory items in all the exhibits that support and challenge the extent of De La Cruz's injuries, the verdict is not so against the great weight of the evidence as to be clearly wrong and unjust. DNIC's second issue is overruled.

## CONCLUSION

Having overruled both of Appellant DNIC's issues, we affirm the trial court's judgment.

August 28, 2013

YVONNE T. RODRIGUEZ, Justice

Before Rivera, J., Rodriguez, J., and Larsen, J. (Senior)
Larsen, J. (Senior)(Sitting by Assignment)

- 11 -