**Affirmed and Opinion Filed January 24, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-16-00816-CV

**TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, Appellant**
**V.**
**BILLY THOMPSON, Appellee**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-00557**

## MEMORANDUM OPINION

Before Justices Bridges, Myers, and Schenck
Opinion by Justice Bridges

Appellee Billy Thompson sustained a compensable injury on May 7, 1997 and received worker's compensation benefits from appellant Travelers Indemnity Company of Connecticut (Travelers). Thompson later sought Lifetime Income Benefits (LIBs) for injuries and diagnoses that arose out of or naturally flowed from the compensable injury. After the Texas Department of Insurance, Division of Workers' Compensation (the Division) determined Thompson's compensable injury was not the producing cause of his other injuries and diagnoses, it denied LIBs. Thereafter, Thompson filed his claims in the district court. A jury returned a verdict in his favor and awarded LIBs.

In two issues, Travelers argues the evidence is legally insufficient to support both the jury's finding that the 1997 compensable injury extended to and included thirteen other injuries or diagnoses and that Thompson is entitled to LIBs. We affirm.

**Background**

Thompson worked for Allied Fence Company in 1997. Allied Fence carried a worker's compensation policy through Travelers.

It is undisputed that on May 7, 1997, Thompson fell approximately six feet off a ladder in the course and scope of his employment and injured his back, right elbow, head, and neck on some pipes. Thompson underwent four back surgeries between 1999 and 2004, none of which provided long-term relief.

In 2004, Thompson saw Dr. James Key, who diagnosed him with cervical disc disorder, radiculopathy, and lumbar disc disorder with radiculopathy. Dr. Key's notes indicated Thompson was "a train wreck, a disaster" and "at first glance, this is obviously one of the worse cases of failed back syndrome that I've ever seen."

For the next several years, Thompson continued to see various doctors and underwent various treatments such as injections, physical therapy, and pain management to treat his injuries and conditions.

On February 4, 2016, nearly sixteen years after the injury, Thompson saw Dr. Tuan Trinh, a doctor of osteopathy who reviewed his past medical records. Dr. Trinh determined additional medical conditions resulted from the original 1997 injury that should be "added on" and that Thompson should receive LIBs from Travelers.

The Division determined Thompson's compensable injury on May 7, 1997 extended to include a right elbow contusion but did not extend to include his others injuries.[1] It further concluded Thompson's injury was not a producing cause of the total loss of use of either hand at or above the wrist or either foot at or above the ankle. Thus, the Division determined he was not entitled to LIBs.

Thompson appealed the decision to the Division Appeals Panel, which declared the order final for purposes of judicial review without issuing a separate opinion. Thompson then filed an original petition in district court and sought a jury trial. The case went to trial on February 16, 2016.

Thompson testified he currently suffers from bilateral leg pain that travels all the way down to his feet. The surgeries did not alleviate the pain, and he still hurt at the time of trial. He described the pain as "numbness and tingling." He testified his feet often swell and he cannot wear normal shoes, but instead wears house shoes. He described difficulty holding hot beverages and often losing his grip and droppimg cups. He requires a cane to walk. He cannot perform any job that requires use of both feet or both hands—"I can't do any job now."

The jury heard testimony from Dr. Trinh through deposition by written questions. Dr. Trinh's background included evaluating orthopedic injuries in general and lower back injuries in particular. His training and experience also included the effect and treatment of radiculopathy as related to spinal injuries.

Dr. Trinh first examined Mr. Thompson on February 14, 2013. After reviewing Thompson's medical history, Dr. Trinh's initial diagnosis included cervical IVD displacement,

---

[1] His "other injuries" are referred to as "right or left side lumbar radiculopathy; right or left side cervical radiculopathy; cervical radiculitis; disc bulges at C3-4, C4-5, C5-6, or C6-7; cervical intervertebral disc disorder with myelopathy; disc bulges at L3-4, L4-5, or L5-S1; central canal stenosis at L3-4 or L4-5; status post lumbar interbody fusion at L4-5 or L5-S1; lumbar intervertebral disc disorder with myelopathy; lumbar failed back surgery syndrome; right shoulder impingement syndrome; right elbow sprain or strain; adjustment disorder with depressed mood; or pain disorder associated with both psychological factors and a general medical condition."

722.0; lumbar IVD displacement, 722.10; and radiculitis, neuralgia, neuritis, 724.2. He opined that "falling off a pallet onto the concrete, landing on his back, hitting his neck on a bronze pipe and his elbow hitting the concrete at work on May 7th, 1997 caused a serious direct impact force to at least his cervical spine, lumbar spine, and right shoulder which stressed the joint structures of his spine and right shoulder and produced" the injuries. The fall "resulted in the lumbar disc protruding into an area where it does not belong, resulting in the effacement of the interior thecal sack with abutment of the descending nerve roots which produced Mr. Thompson's" injuries and causes him "to experience pain and physical limitations that produced the adjustment disorder with depressed mood and pain disorder associated with both psychological factors and a general medical condition."

Travelers presented the videotaped deposition of Dr. David Bauer, a board-certified orthopedic surgeon specializing in spinal injuries and diseases. Dr. Bauer performed an independent medical exam of Thompson. He saw Thompson only once.

During Dr. Bauer's physical exam of Thompson, he did not observe any acute distress. Thompson appeared to sit comfortably and walked without assistance. He had a normal swing and stance phase unlike someone suffering significant changes in his spine, knees, hips, or legs. Dr. Bauer did not observe any muscle atrophy, which indicated Thompson's nerves and muscles were working normally. Although Thompson exhibited diminished range of motion with his arms and legs, Dr. Bauer said this appeared to be from lack of cooperation rather than injury or spinal disease. Dr. Bauer admitted Thompson exhibited weakness in multiple muscles that could not be explained by any anatomic or neurologic bases.

Based on Dr. Bauer's review of Thompson's medical records and the physical exam, he diagnosed Thompson as follows:

> 1. Cervical sprain/strain, related by history to the incident on May 7, 1997.

2.    Lumbar sprain/strain, related by history to the incident on May 7, 1997.

3.    Right shoulder injury, by history, details unknown.

4.    Thoracic injury, by history, details unknown.

5.    Progressive cervical degenerative disease, unrelated to the injury of 1997.

6.    Status post multiple spinal surgeries, which have left the claimant symptomatic.

7.    Symptom magnification.

Dr. Bauer determined Thompson "for the most part suffers from ordinary diseases of aging and diseases of life." He did not believe any further physical therapy would change Thompson's "disability mindset or his functional abilities."

At the conclusion of evidence, Travelers moved for a directed verdict, which the trial court denied. Neither side objected to the jury charge. The charge informed the jury of the Division's prior decision and instructed, "You may consider but are not required to give this determination any particular weight."

The jury found that Thompson's 1997 compensable injury extended to and included all thirteen of his "other injuries." It further found Thompson's compensable injury was a producing cause of the permanent loss of the use of both feet at or above the ankles, both hands at or above the wrists, and either foot at or above the ankle and either hand at or above the wrist. Thus, the jury determined Thompson was entitled to LIBs from Travelers.

Travelers filed a motion for new trial arguing the evidence was insufficient to support LIBs. The motion was overruled by operation of law. This appeal followed.

**Preservation of Issues Raised on Appeal**

Before addressing the merits of Travelers' arguments, we must first discuss the prerequisites for presenting a complaint for appellate review. In general, the record must

demonstrate the complaint was made to the trial court by a timely request, objection or motion, and the trial court either expressly or implicitly ruled or refused to rule on the request, objection, or motion. TEX. R. APP. P. 33.1(a). More specific preservation requirements pertain to legal sufficiency complaints. *DFW Aero Mechanix, Inc. v. Airshares, Inc.*, 366 S.W.3d 204, 206 (Tex. App.—Dallas 2010, no pet.). To preserve a legal sufficiency challenge after a jury trial, an appellant must (1) move for a directed verdict, (2) move for a judgment notwithstanding the verdict, (3) object to the submission of a jury question, (4) move to disregard the jury finding, or (5) move for a new trial. *Id*.

Although Travelers argues we should liberally construe its oral motion for directed verdict and written motion for new trial to include an objection to the sufficiency of the evidence challenging the extent of Thompson's injuries (Traveler's first issue), we decline its invitation. An objection must not only identify the subject of the objection, but it must also state specific grounds for the desired ruling. *Birnbaum v. Law Offices of G. David Westfall, P.C.*, 120 S.W.3d 470, 476 (Tex. App.—Dallas 2003, pet. denied). Without a proper presentation of the alleged error to the trial court, a party does not afford the trial court the opportunity to correct the error. *Id*.

Here, although Travelers began its oral motion for directed verdict by generally stating, "Basically the issue here is that we think the evidence is legally insufficient," its argument then specifically focused on the necessity of a party to prove an injury to certain body parts to recover LIBs. Travelers repeatedly argued there was no evidence to "prove that there was injury to the member" or "evidence of damage or harm to the physical structure of the enumerated body parts."

Similarly, Travelers' motion for new trial generally stated, "The evidence is legally and factually insufficient in this case," but then specifically limited the scope of its sufficiency

challenges to the jury's LIBs award. It argued, "Proof of an injury to two or more scheduled members constitutes a vital fact necessary to support recovery of LIBs. Such proof is legally insufficient in this case." The new trial motion is silent on Travelers' extent of injury issue.

Although we recognize objections may be liberally construed within the context they are made, we cannot conclude the trial court understood Travelers' arguments as challenges to the sufficiency of the evidence supporting Thompson's extent of injuries claim. Travelers never argued to the trial court, as it does on appeal, that Thompson's extent of injuries claim was insufficient because (1) Dr. Trinh's opinions were unreliable, (2) conclusory, and (3) not based on reasonable medical probability. Thus, Travelers failed to present its arguments and afford the trial court an opportunity to correct any alleged error. *See Birnbaum*, 120 S.W.3d at 476; *see also City of Dallas v. Redbird Dev. Corp.*, 143 S.W.3d 375, 385 (Tex. App.—Dallas 2004, no pet.) (concluding legal sufficiency point challenging expert testimony not preserved when party failed to present argument to trial court).

Further, to the extent Travelers implies it "appears" Thompson understood its argument as challenging the extent of injuries, Thompson's alleged understanding is irrelevant to our analysis. A party seeking to preserve an argument on appeal must present its complaint to the trial court "with such clarity that the *trial court* might understand the precise nature of the objection," not the opposing party. *See United Way of San Antonio, Inc. v. Helping Hands Lifeline Found., Inc.*, 949 S.W.2d 707, 713 (Tex. App.—San Antonio 1997, writ denied). Accordingly, because Travelers failed to raise its objections to the trial court, it has preserved nothing for our review as to its first issue.

In its second issue, Travelers challenges the sufficiency of the evidence to support the jury's award of LIBs. On appeal, Travelers argues the judgment is legally insufficient because the evidence does not establish that Thompson suffered an injury to either foot at or above the

ankle or either hand at or above the wrist and that any such injury he suffered resulted in the permanent and total loss of use of those members of his body. As explained above, Travelers' oral motion for directed verdict and written motion for new trial challenged the sufficiency of the evidence to support "an injury to two or more members." It argued, "there is just no expert evidence," to show damage or harm to the "physical structure of the enumerated body parts." Travelers did not argue the evidence was legally insufficient to show a total and permanent loss of use. Although Travelers cites to portions of its oral motion for directed verdict in its reply brief to show preservation, the portion cited merely refers to loss of use within Travelers' discussion of a specific case, *Dallas National Insurance Co. v. De La Cruz*. During Traveler's specific arguments to the trial court regarding how the present facts are similar to *De La Cruz*, it focused on the lack of evidence to damage or harm to the physical structures of the enumerated body parts, not loss of use. As such, to the extent Travelers argues the evidence is legally insufficient to support Thompson's total and permanent loss of use, its issue is not preserved because it failed to present its argument with clarity such that the trial court would understand its objection. *See Birnbaum*, 120 S.W.3d at 476; *see also United Way of San Antonio, Inc.*, 949 S.W.2d at 713. However, we will consider whether the evidence is legally sufficient to support the jury's determination that Thompson suffered an injury to his hands at or above the wrist or to his feet at or above the ankle thereby entitling him to the LIBs award.

**Discussion**

In its second issue, Travelers argues Thompson failed to present legally sufficient evidence that he suffered an injury to either foot at or above the ankle or either hand at or above the wrist. Thompson responds the evidence is legally sufficient to support the award of LIBs.

When an appellant challenges the legal sufficiency of the evidence to support a jury finding, we consider all the evidence in the light most favorable to the challenged finding,

crediting favorable evidence if a reasonable jury could and disregarding contrary evidence unless a reasonable jury could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 809 (Tex. 2005). If more than a scintilla of evidence supports the jury's finding, the legal sufficiency challenge fails. *Id*. at 813–14.

When an employee is injured on the job, the Act enumerates certain catastrophic injuries for which an employee may recover LIBs. *See* TEX. LABOR CODE ANN. § 408.161(a)(1)-(7) (West 2015); *Ins. Co. of State of Pa. v. Muro*, 347 S.W.3d 268, 270 (Tex. 2011). The enumerated injuries include the loss of both feet, the loss of both hands, or the loss of a hand and a foot, among others. *Id*. § 408.161(a)(2), (3), (4). The legislature has limited the award of LIBs to those body parts specifically enumerated in the statute, and "nothing in the statute authorizes the substitution of other injuries or body parts for those enumerated." *Muro*, 347 S.W.3d at 276. The injury to the statutory body part may be direct or indirect, but the injury must extend to and impair the statutory body part itself to implicate section 408.161. The supreme court has held that "piecemeal, unexplained statements in various medical records" will not support an award of LIBs. *See Dallas Nat'l Ins. Co. v. De La Cruz*, 470 S.W.3d 56, 59 (Tex. 2015).

Both parties rely on *Dallas National Insurance Co. v. De La Cruz*, the most recent supreme court authority discussing LIBs, to support their position. 470 S.W.3d 56. In that case, the trial court awarded De La Cruz LIBs based on her claim that a back injury extended to and affected both her feet at or above the ankle, causing permanent, total loss of use. *Id*. at 57. In affirming the award, the court of appeals relied on medical records noting "objective signs of radiculopathy, an impairment rating for radiculopathy, records demonstrating a 'detrimental loss on right side L2 and left side L3,' use of a cane, and her complaints of pain radiating down into her toes." *Id*. The supreme court determined the evidence was legally insufficient to support the award because "the closest the evidence comes to proving damages or harm to the physical

structure of De La Cruz's feet are piecemeal, unexplained statements in various medical records." *Id*. at 59. The supreme court further explained:

> [T]he record does not identify what parts of her lower extremities were involved or whether there was any physical damage or harm to them. That is, there is no evidence that those conditions cause or were the result of damage or harm to the physical structure of both her feet at or above the ankle as opposed to reflecting injury to the nerve roots in her back.

*Id*.

Travelers argues Thompson's evidence suffers from the same fatal flaw. That is, Thompson's attempt to prove indirect injuries to either his hands or feet fails because the various medical records do not elaborate on how any injury to the nerve roots in his back may have affected his hands or feet; therefore, the evidence amounts to nothing more than the type of unexplained, piecemeal records the supreme court rejected in *De La Cruz. Id*. After reviewing the record, we disagree.

We first note Travelers seems to indicate in its reply brief "the existence of radiculopathy will support an award of LIBs," citing *De La Cruz*. Here, the jury specifically found, and Thompson's medical records support, that he suffered from bilateral lumbar radiculopathy and bilateral cervical radiculopathy. However, we do not read *De La Cruz* so broadly. Although the plaintiff in *De La Cruz* suffered "lower extremity problems secondary to radiculopathy . . .," the supreme court concluded the medical records failed to tie the medical condition to any damage or harm to both feet or both hands. Thus, we do not agree a radiculopathy diagnosis alone is sufficient to support LIBs. Rather, we must consider the evidence and medical records, admitted without objection, to determine whether a scintilla of evidence exists linking Thompson's bilateral lumbar radiculopathy or bilateral cervical radiculopathy to harm or damage to the physical structure of both hands at or above the wrist or both feet at or above the ankles.

–10–

It is undisputed Thompson did not directly injure his hands or feet in the fall. However, a review of his records indicate that his radiculopathy caused more than pain in his hands and feet.

In Thompson's initial pain evaluation in December 2001, Dr. Karl Kuchenbacker noted Thompson experienced pain radiating down both feet "associated with swelling, hot and cold temperature changes, and burning pain." In July 2002, Thompson reported numbness in the right forearm and fingers. Dr. Kuchenbacker further noted Thompson had "left foot flare." In August 2002, Thompson described his arm and fingers as "numb with tingling."

An October 22, 2002 record from Dr. Kuchenbacker states, "The patient presents with neck pain that is constant, radiates into the right shoulder into the right hand in all five digits. He describes this pain as burning, sharp, with numbness in the fingers . . . low back pain, bilaterally, right and left sides. Patient states it radiates to his toes and the bottom of his feet."

A May 4, 2004 record from chiropractor Brian Saul describes "weakness in his grip on the right . . ." with a "lumbar intervertebral disc with radiculopathy" and "cervical intervertebral disc with radiculopathy" diagnosis. A month later, Thompson expressed an increased weakness with his right arm, and his physical examination revealed a "weakness in his right grip strength approximately 50%."

The October 19, 2004 intake evaluation by Dr. James Key states Thompson "is a trainwreck, a disaster." Compared to previous examinations and visits, Thompson's "condition appears to be worsening on a daily basis." Ankle reflexes were absent. Thompson was limited to walking one hundred feet comfortably with a cane. He could not carry groceries for himself or complete a trip to the grocery store without rest breaks.

Dr. Mae Nadeem's initial consultation on May 3, 2010 noted numbness in both legs and feet. Thompson continued to complain of numbness in both feet in a follow up on June 30, 2010 and numbness in the right arm and fingers on August 3, 2011.

–11–

Notes from Thompson's physical examination on January 9, 2014 with Dr. Stephen Graham revealed "some slight decrease in ankle reflex on the right hand side." By March, Dr. Graham observed "decreased ankle reflexes bilaterally, right greater than left." His assessment included "degenerative disk disease in neck and low back with radiculopathy."

Although Thompson's medical records repeatedly reference pain in his hands and feet, which is insufficient alone to support a LIBs award, Thompson did not experience just pain, but rather endured swelling, numbness, tingling, foot flare, decreased ankle reflexes, sensitivity to hot and cold temperatures, and deteriorating muscle weakness hindering his ability to grip objects with his hands. Dr. Trinh stated that in his medical opinion based on reasonable medical probability, the 1997 fall caused injuries resulting in Thompson's radiculopathy.[2] Thus, these symptoms indicated Thompson's radiculopathy caused indirect physical damage and harm to his feet at or above the ankles and to his hands at or above his wrists to support the jury's LIBs award. *See, e.g., Dallas Nat'l Ins. Co. v. Morales*, 394 S.W.3d 826, 833–34 (Tex. App.—El Paso 2012, no pet.) (upholding LIBs award based on evidence of radiculopathy affecting both legs resulting in difficulty walking, bending, stooping, squatting, and absent lower extremity reflects in both ankles). For these reasons, we conclude the facts of this case are distinguishable from *De La Cruz*. Accordingly, the evidence is legally sufficient to support the jury's LIBs award, and we overrule Traveler's second issue.

---

[2] He specifically stated, in a February 21, 2013report "the mechanism of injury of falling off a pallet onto a concrete, landing on his back, hitting his neck on a bronze pipe and his elbow hitting the concrete" on May 7, 1997 "result[ed] in lumbar disc protruding into an area where it does not belong resulting in effacement of the anterior thecal sac with abutment of the descending nerve roots which produced Mr. Thompson's bilateral L5-S1 radiculopathy."

**Conclusion**

The judgment of the trial court is affirmed.

/David L. Bridges/
_____
DAVID L. BRIDGES
JUSTICE

160816F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TRAVELERS INDEMNITY COMPANY
OF CONNECTICUT, Appellant

No. 05-16-00816-CV          V.

BILLY THOMPSON, Appellee

On Appeal from the 193rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-14-00557.
Opinion delivered by Justice Bridges.
Justices Myers and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee BILLY THOMPSON recover his costs of this appeal from appellant TRAVELERS INDEMNITY COMPANY OF CONNECTICUT.

Judgment entered January 24, 2018.