COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| REGION XIX SERVICE CENTER, | § | No. 08-08-00232-CV |
| Appellant, | § | Appeal from |
| v. | § | 171st District Court |
| MARIA R. BANDA, | § | of El Paso County, Texas |
| Appellee. | § | (TC # 2005-186) |
| | § | |

## O P I N I O N

Region XIX Service Center appeals from a judgment reversing the decision of the Texas Department of Insurance, Division of Worker's Compensation. The trial court entered judgment based on the jury's determination that Maria Banda was entitled to lifetime income benefits with an accrual date of January 1, 2003. We reform the judgment and affirm as reformed.

## FACTUAL SUMMARY

Maria Banda sustained a compensable injury to her left knee in March 1992 when she twisted it while working for Region XIX as a teacher's aide. Dr. Jacob Heydemann performed an osteotomy on the knee in June 1992. The procedure involved surgically attaching a fixator to the leg to hold the bone together for a set period of time, usually three to six months. Banda underwent surgery in September 1992 to remove the fixator. Following surgery, Banda had physical therapy but she continued to experience swelling and pain to the degree that she had to use a walker or crutches. She had knee replacement surgery in 1995. Banda continued to experience pain and swelling and the knee often buckled due to instability. In 2002, it was determined that a portion of the bone in Banda's leg had broken and the metal stem portion of the knee replacement had become loose which

caused severe pain. The knee was replaced in 2002 and again in 2005. As a result of instability in the knee, Banda tore the tendon connecting the quadriceps to the kneecap and it had to be surgically repaired in 2004.

Banda also developed tingling, numbness, and swelling in the fingers of both hands as a result of using the walker and crutches. She was diagnosed with carpal tunnel syndrome in both hands and underwent carpal tunnel release surgery in her right hand in 1993 and in her left hand in 1997. She also had ulnar release surgery of the right elbow in 1996, ulnar release surgery of the left elbow in 1998, and rotator cuff repair of the left shoulder in 2001.

Dr. Heydemann released Banda to light duty for a short period of time in 2003 and Region XIX offered her light duty employment as a teacher's assistant in Canutillo.[1] Banda declined the position because of the difficulty involved in commuting to Canutillo from her home in central El Paso by bus.[2] Banda could not drive as a result of her condition and had surrendered her license in 1995. In addition, traveling by bus would likely require her to stand for significant periods of time contrary to Dr. Heydemann's orders.

At the time of trial, Banda had pain in her left knee and leg which was only partially relieved by pain medication. She also has persistent pain in her hands and she described herself as never being pain-free. Banda has difficulty with everyday activities and requires assistance to shower and dress. Her family members take care of ordinary tasks such as cleaning and shopping because her ability to grasp or lift things is limited.

Banda received worker's compensation income benefits from Region XIX beginning in

---

[1] Canutillo, Texas is located in far western El Paso County.

[2] To reach Canutillo, she would have to travel by bus to the downtown hub and then transfer to another bus headed west to Canutillo.

September 1992 and continuing through December 1999. In 2004, she made a claim for lifetime income benefits (LIBs) claiming the loss of and/or total and permanent loss of use of both hands, or one hand and one foot, as a result of a work-related injury. According to the hearing officer's October 5, 2004 written decision, the parties stipulated that Banda sustained a compensable injury to her bilateral upper extremities and left lower extremity on March 31, 1992. Based on the evidence presented, the hearing officer found that Banda had some use of her bilateral upper extremities and left lower extremity. The hearing officer further found that Banda failed to present sufficient evidence to prove that she has lost substantial use of her hands at or above the wrists or the left foot at or above the ankle, and the condition is not such that she cannot get and keep employment requiring the use of her bilateral upper extremities or left lower extremities. Banda appealed the decision and order to the Appeals Panel. Because the Appeals Panel did not issue a written decision by the statutory deadline, the hearing officer's decision became the final decision. TEX.LAB.CODE ANN. § 410.204(c)(West 2006). Banda filed suit seeking judicial review of the decision denying her claim for LIBs.

A jury determined that Banda's March 31, 1992 compensable injury resulted in the total loss of use of her left and right hands at or above the wrist and the total loss of use to her left foot at or above the ankle. It found that her entitlement to LIBs accrued on January 1, 2003. Based on the verdict, the trial court reversed the decision of the Appeals Panel and entered judgment in Banda's favor.

**LEGAL SUFFICIENCY**

In Issue One, Region XIX challenges the legal sufficiency of the evidence supporting the jury's findings. Region XIX contends there is no evidence that Banda's compensable injury resulted in the total loss of use of both hands or one hand and one foot. Additionally, it contends there is no

evidence that the conditions related to Banda's claimed loss of use are related to the compensable injury.

*Standard of Review*

An appellate court will sustain a legal sufficiency or "no-evidence" challenge if the record shows: (1) the complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *El Paso Independent School District v. Pabon*, 214 S.W.3d 37, 41 (Tex.App.--El Paso 2006, no pet.). Region XIX contends that there is no evidence of the vital fact that there is permanent loss of substantial utility of both hands or one hand and one foot, or that the condition of both hands or one hand and one foot prevent Banda from employment requiring use of those members. This argument falls within the first category which precludes us from automatically disregarding contrary evidence. *See City of Keller*, 168 S.W.3d at 810-11 (stating that contrary evidence may not be disregarded in sufficiency reviews under the first, second, and fourth circumstances).

In conducting our review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *Id*. at 822. Even if evidence is undisputed, it is the province of the jury to draw from it whatever inferences they wish so long as more than one inference is possible. *Id*. at 821. But if the evidence allows only one inference, neither jurors nor the reviewing court may disregard it. *Id*. We are also mindful that jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. *Id*. at 819. When there is conflicting evidence, it is the province of the jury to resolve such conflicts. *Id*. at 820. In every circumstance in which reasonable jurors could resolve conflicting evidence either way, the

reviewing court must presume they did so in favor of the prevailing party, and disregard the conflicting evidence in its sufficiency review. *Id*. at 821. If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so. *Id*. at 822. So long as the evidence falls within this zone of reasonable disagreement, we may not substitute our judgment for that of the trier-of-fact. *Id*. The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id*. at 827.

*Eligibility for Lifetime Income Benefits*

Pursuant to Section 408.161 of the Labor Code, a person is eligible for lifetime income benefits if she sustains loss of both hands at or above the wrist, or loss of one foot at or above the ankle and the loss of one hand at or above the wrist. TEX.LABOR CODE ANN. § 408.161(a)(3), (4)(West 2006). Under the statute, the total and permanent loss of use of a body part is the loss of that body part. TEX.LABOR CODE ANN. § 408.161(b). "Total loss of use" of a member of the body exists whenever by reason of injury such member no longer possesses any substantial utility as a member of the body or the condition of the injured member is such that the worker cannot get and keep employment requiring the use of such member. *Navarette v. Temple Independent School District*, 706 S.W.2d 308, 310 (Tex. 1986); *Galindo v. Old Republic Insurance Company*, 146 S.W.3d 755, 759 (Tex.App.--El Paso 2004, pet. denied). The loss of use must also be permanent for a claimant to qualify for lifetime income benefits. *Galindo*, 146 S.W.3d at 759.

Consistent with the foregoing law, the charge provided as follows:

> In considering your answer to question 1 you are instructed that the Texas Workers' Compensation Commission determined that Maria Banda had some use of her bilateral upper extremities and left lower extremities; the condition of her hands and left foot did not cause a substantial loss of use of her hands at or above the wrists or her left foot at or above the ankle; and that the condition of her hands and feet did

not prevent her from obtaining and retaining employment requiring the use of her hands and left foot.

You are further instructed that that [sic] 'loss of a body part' means the total and permanent loss of use of that body part.

You are further instructed that 'Total and permanent loss of use' means the body part no longer possesses any substantial utility as a member of the body or the condition of the body part is such that the injured worker cannot obtain and retain employment requiring the use of the body part.

Did Maria Banda's compensable injury result in loss of the body parts below or the total and permanent loss of use, as defined above, of the body parts identified below:

Answer 'Yes' or 'No' for each of the following:

A. The left hand at or above the wrist?
B. The right hand at or above the wrist?
C. The left foot at or above the ankle?

The jury answered "Yes" to each question.

*Causal Connection*

We first consider Region XIX's contention that the evidence is legally insufficient to prove that the conditions of the upper extremities and foot are causally related to the March 31, 1992 knee injury. Banda responds that Region XIX cannot urge this as a ground for reversal because it did not contest this issue before the Workers' Compensation Commission. She has attached to her brief a copy of a decision and order entered by the Workers Compensation Commission dated October 2, 1997.[3] Section 410.301 of the Labor Code provides that judicial review of a final decision of the

---

[3] According to the decision, a contested case hearing had been scheduled to determine (1) whether Banda's compensable injury to the left knee and bilateral carpal tunnel syndrome included or extended to an injury of bilateral ulnar nerve entrapment; and (2) whether the carrier had waived the right to contest compensability within sixty days of being notified of the injury. Prior to the scheduled hearing date, the carrier notified the Commission by letter that it no longer wished to pursue these issues and would accept liability. The hearing was canceled and the hearing officer concluded that Banda's compensable injury to the left knee and bilateral carpal tunnel syndrome extended to an injury of bilateral ulnar nerve entrapment and the carrier had waived the right to contest compensability of the claimed bilateral ulnar nerve entrapment injury.

appeals panel regarding compensability or eligibility for or the amount of income or death benefits is conducted as provided by Subchapter G of Chapter 410 of the Texas Labor Code. TEX.LABOR CODE ANN. § 410.301(a). A trial under Subchapter G is limited to the issues decided by the appeals panel and on which judicial review is sought. TEX.LABOR CODE ANN. § 410.302(b). For Region XIX to raise this issue on appeal, Banda must have been obligated to prove in the proceedings below that the conditions of the upper extremities and foot are causally related to the March 31, 1992 knee injury.

Region XIX maintains that the October 2, 1997 decision attached to Banda's appellate brief cannot be considered because Banda failed to introduce it into evidence in the trial court. We need not resolve that question because Region XIX offered into evidence the decision and order issued on October 5, 2004 by the hearing officer. The hearing officer did not determine whether the conditions of the upper extremities and foot were causally related to the original March 31, 1992 work-related knee injury because Region XIX did not contest that issue. In fact, Region XIX stipulated that Banda "sustained a compensable injury to her bilateral upper extremities and left lower extremity on March 31, 1992."[4] The only issue addressed by the hearing officer was whether Banda had proven by sufficient evidence that she had a total loss of use of both hands or one hand and one foot. Further, that is the only issue raised in Banda's petition filed in the district court. Under Section 410.302(b), the proceedings in the district court were limited to the issue raised by Banda's petition.

Despite the statutory restriction on the issues which could be resolved by the district court, we understand Region XIX to argue that the trial court's charge placed the burden on Banda to prove

_____

[4] Compensable injury is defined by the Labor Code as meaning "an injury that arises out of and in the course and scope of employment for which compensation is payable under this subtitle." TEX.LABOR CODE ANN. § 401.011(10) (West Supp. 2010).

that the conditions of her upper extremities and foot are causally related to the March 31, 1992 knee injury. Ordinarily, when a party does not object to the charge at trial and does not challenge it on appeal, the sufficiency of the evidence is measured using the charge actually given. *St. Joseph Hospital v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2002); *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000). The charge asked whether Banda's compensable injury resulted in loss of the specified body parts or the total and permanent loss of use of the specified body parts. Region XIX's argument assumes that the term "compensable injury" as used in the question refers only to the original knee injury and it claims that the question required Banda to prove that the original knee injury "resulted in" or caused the conditions associated with the bilateral upper extremities and foot. The court's charge does not limit the compensable injury to the original March 31, 1992 knee injury. Consequently, we conclude that Banda was not required to prove that the conditions of the upper extremities and foot are causally related to the March 31, 1992 knee injury.

*Total Loss of Use*

Region XIX also challenges the legal sufficiency of the evidence supporting the jury's determination that Banda's compensable injury resulted in a total loss of use of both hands at or above and wrist and the left foot at or above the ankle. There are two aspects to the definition of total loss of use: (1) whether Banda's hands, or one hand and one foot, no longer possess any substantial utility or (2) whether the condition of Banda's hands, or one hand and one foot, prevents her from getting and keeping employment requiring use of her hands, or one hand and one foot. Before engaging in sufficiency review, we must address Region XIX's contention that expert medical testimony is always required to prove total loss of use.

Although raised in the context of Region XIX's legal sufficiency claim, the issue whether expert testimony is required to establish total loss of use is a legal question which is reviewed *de novo*. *See FFE Transportation Services, Inc. v. Fulgham*, 154 S.W.3d 84, 89-90 (Tex. 2004). Generally, expert testimony is necessary when the issue is of such a nature as to be beyond the knowledge or experience of the layperson. *See id.* at 90. Region XIX is correct that expert medical testimony is required in a worker's compensation case to establish the nature of an injury, whether it is temporary or permanent, and the extent of disability or incapacity resulting from the injury. *See Mendoza v. Fidelity & Guaranty Insurance Underwriters, Inc.*, 606 S.W.2d 692, 695 (Tex. 1980).

To be entitled to LIBs, Banda was required to prove that by reason of injury a member of her body no longer possessed any substantial utility as a member of the body, or the condition of the injured member is such that Banda could not get and keep employment requiring the use of the member. *See Navarette*, 706 S.W.2d at 310. She was also required to prove that the loss of use is permanent. *Galindo*, 146 S.W.3d at 759. Expert testimony would certainly be required to establish that the loss of use is permanent because whether an injury or condition is permanent is not a matter

within the experience and common knowledge of the layperson. We also agree with Region XIX that Banda was required to introduce expert medical testimony regarding her injuries, diagnosis, treatment, prognosis, and condition. Consistent with *Mendoza* and Rule 702, Banda introduced expert medical testimony to establish those matters. *See id.* Her expert medical witnesses also testified regarding her physical limitations resulting from her injuries, but they did not specifically offer an opinion on the ultimate issue, that is, whether Banda's hands, or one hand and one foot, no longer possessed any substantial utility as a member of the body, or whether the condition of her hands, or one hand and one foot, is such that she cannot get and keep employment requiring the use of these members of her body. Given the substantial medical testimony presented regarding Banda's injuries, condition, and physical limitations, we find that the ultimate issue--whether Banda's hands and foot possessed any substantial utility as members of the body--was not beyond the knowledge and experience of the jurors. In this same context, the jurors did not require specialized training to determine whether Banda's condition was such that she could not get or keep employment requiring the use of her hands, or one hand and one foot. On these facts, we conclude that Banda was not required to present expert testimony to establish total loss of use.

We now consider whether there is a complete absence of evidence that Banda's hands, or one hand and one foot, no longer possess any substantial utility as members of the body. Banda testified at the trial conducted in February of 2008. At that time, she had constant pain in her left leg and knee relieved only partially by medication. It is difficult for her to walk or perform everyday activities and she requires assistance to go up or down steps. Because of the condition of her left knee and swelling in her leg, she is unable to clean the house or shop for groceries, chores which her husband now performs. Banda described performing these activities as "impossible." With respect to her upper extremities, Banda admitted that she has some movement in her hands, but her hands

and arms tingle and are painful, and they swell at night. It is difficult for her to grasp any items, such as a cup or a comb, and she requires assistance to comb her hair, shower, and dress. Due to the condition of her hands and arms, Banda often drops items when she tries to pick up or hold them. Further, her use of the telephone is restricted to less than five minutes at a time because she has to frequently switch from one hand to the other. Banda also has trouble lifting items, such as a gallon of milk. Banda is unable to drive because she cannot grasp the steering wheel and it is painful for her to bend the knee.

Dr. Andrew Palafox, an orthopedic surgeon who has treated Banda since 1998, testified by videotaped deposition regarding Banda's injuries, treatment, and condition and about a letter he had written on October 26, 2004. In the letter, Dr. Palafox related that Banda had suffered a work-related injury to the left knee, both elbows, both wrists and shoulder on March 31, 1992.[5] Dr. Palafox explained that if Banda used her hands too much they would "go to sleep." She has constant pain in her hands and numbness in her fingers. Her upper extremities were weak and she could not walk or sit for extended periods of time. He described Banda's condition as chronic and deteriorating, and in his opinion, it is within reasonable medical probability that the condition will be present for life. Dr. Palafox concluded, after explaining Banda's condition, that she would not qualify for any jobs with which he is familiar, and in his opinion, she was unable to work due to the condition of her knee and hands.

Region XIX asserts that the foregoing evidence was negated by Dr. Palafox during cross-examination.[6] He testified that Banda utilized her wrists when she used a walker, and therefore, her

---

[5] The letter stated the date as March 31, 2002, but Dr. Palafox testified that the correct date was March 31, 1992.

[6] The record does not reflect the date on which Dr. Palafox's deposition was taken.

wrists function to this extent. He also said that Banda could use her hands to talk on the phone, write, comb her hair, and eat. He agreed that Banda could use her hands to talk on the phone in a work environment "if it wasn't too complicated." Additionally, Dr. Palafox agreed with defense counsel that Banda's left foot and ankle function were "near normal" because she uses them to walk although with assistance. Region XIX also relies on testimony by another of Banda's medical experts, Dr. Ezra S. El-Kayam, a neurologist. Dr. El-Kayam conducted a neurological exam of Banda in 1999 and determined that she had reflex sympathetic dystrophy (RSD) stage 1 and mild bilateral carpal tunnel syndrome. He described RSD as a pain syndrome of unknown etiology. He testified that Banda did not have total loss of use in her hands in 1999. He did not have an opinion whether she had lost the use of her foot. Dr. El-Kayam did not see Banda again after 1999. When asked what kind of work Banda could have done with her right hand in 1999, Dr. El-Kayam replied: "I don't know. I would assume that she could still teach, but she would loose [sic] ability to hold heavy objects. She would be -- she would have loss of dexterity. So for instance, doing computer work be [sic] fairly difficult for her. It requires some fast and detailed movements." He did not believe she would be able to write or type extensively.

The jury heard evidence that would support a finding that Banda's hands at or above the wrist no longer possessed any substantial utility as a member of the body. The evidence would also support a finding that Banda's loss of use is permanent. While the jury heard conflicting evidence regarding the degree of utility remaining in her hands and that evidence would permit a reasonable and fair-minded juror to draw a contrary inference, it was the jury's responsibility to resolve these conflicts. Because the jurors could resolve the conflicting evidence either way, we presume the jury resolved the conflict in favor of Banda and disregard the conflicting evidence in our sufficiency review. *See City of Keller*, 168 S.W.3d at 821. We find that the evidence is legally sufficient to

support the challenged finding. *See Pabon*, 214 S.W.3d at 41-42 (evidence sufficient to prove total loss of use under first part of definition where claimant, at the time of trial, could not grasp objects with her hands, had constant pain in her hands, elbows, and shoulders and had limited ability to perform ordinary tasks such as housework, cooking, using a telephone, and writing). Having determined that the evidence is legally sufficient to support the jury's finding under the first part of the total loss of use test, it is unnecessary to review whether it is sufficient to support a finding that the condition of Banda's hands, or one hand and one foot, is such that Banda could not get and keep employment requiring the use of these parts of her body. We overrule Issue One.

### FACTUAL SUFFICIENCY

In Issue Two, Region XIX challenges the factual sufficiency of the evidence supporting the jury's finding of total and permanent loss of use of two hands and one foot. In reviewing a challenge to the factual sufficiency of the evidence supporting a vital fact, we must consider, weigh, and examine all of the evidence in the record, both supporting and against the finding, to decide whether the verdict should be set aside. *Plas-Tex, Inc. v. U.S. Steel Corporation*, 772 S.W.2d 442, 445 (Tex. 1989). When a party attacks the factual sufficiency of an adverse finding on an issue on which the opposing party has the burden of proof, we should set aside the verdict only if the evidence supporting the jury finding is so weak as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We are not permitted to substitute our judgment for that of the jury. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761-62 (Tex. 2003). Further, we bear in mind that the factfinder is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *Id.*

We have detailed the evidence both supporting and contrary to the verdict in the context of the legal sufficiency review, but disregarded the contrary evidence under the applicable legal

sufficiency standard. In reviewing the factual sufficiency of the evidence, we have examined all of the evidence, including the evidence contrary to the jury's verdict. The evidence supporting the verdict is not so weak that it renders the jury's verdict clearly wrong and manifestly unjust. Finding the evidence to be factually sufficient, we overrule Issue Two.

## THE ACCRUAL DATE

In Issue Three, Region XIX challenges the legal and factual sufficiency supporting the jury's finding that January 1, 2003 is the accrual date of Banda's lifetime income benefits. Banda's brief does not address this issue.

The court's charge asked the jury to determine the accrual date for the LIBs and instructed the jury that:

> 'Accrual Date' means the earliest date from which MARIA BANDA became entitled to receive Lifetime Income Benefits.

The Austin Court of Appeals has held that an employee is eligible to receive LIBs on the date that the employee suffers from one of the conditions specified in Section 408.161. *Mid-Century Insurance Company v. Texas Workers' Compensation Commission*, 187 S.W.3d 754, 759 (Tex.App.--Austin 2006, no pet.). Once an employee is adjudicated eligible to receive LIBs, the benefits should be paid retroactively to the date the employee first became eligible. *Id.*

We will examine the record to determine whether there is legally sufficient evidence to support the jury's finding. Since we found the evidence legally and factually sufficient to support the jury's finding of total loss of use of both hands, we will focus on the evidence pertinent to the hands. In 1993, Banda began having pain, tingling, numbness, and swelling in her right hand. She was diagnosed with carpal tunnel syndrome and had surgery on her right hand for carpal tunnel release in 1993. Banda subsequently began experiencing pain in her left arm and both shoulders.

She had carpal tunnel release surgery on her left hand in 1996, but she continued to experience pain in her arms and had trouble grasping items. She had ulnar release surgery on her right elbow in 1996 and on her left elbow in 1998. In November 1998, a doctor's note recorded that Banda had undergone an FCE evaluation but her strength level could not be determined because she could not "tolerate much." The doctor found that she was markedly restricted, she had difficulty doing any lifting, and she had tenderness over the forearms and both shoulder girdles. Dr. El-Kayam saw Banda in 1999 and recorded in his notes that she had hyperesthesias and severe pain in her shoulders and right forearm, pain in both hands that radiated to the forearms which caused her to drop objects, nocturnal paresthesia, difficulty using her hands, and diffuse weakness. In 2003, Banda told Dr. Heydemann that she would like to try to return to light duty work and he released her to light duty with limitations that she should not to do any extensive walking or standing. When Region XIX offered her a job in Canutillo, Banda declined because taking the bus would likely require extensive standing and sitting, and she knew that the job would require activities that she could not perform, such as bending, squatting, and kneeling. At trial, Banda described her condition as it existed on the day of trial. She related to the jury how her condition had deteriorated since 2003 when she briefly attempted to return to light duty work. Dr. Palafox testified about a letter he had written dated October 26, 2004 in which he explained Banda's condition and related how she had pain in her upper extremities and hands all of the time.

Banda did not attempt to pinpoint the exact date on which she had lost the total use of her hands, but the evidence permits a finding by the jury that Banda had lost the total use of both hands by January 1, 2003. In fact, there is evidence which would have supported an earlier accrual date. We therefore find the evidence legally sufficient.

There is also evidence which would have supported a later accrual date. Banda testified that

her condition has worsened since 2003 and Dr. Palafox's letter dated October 26, 2004 detailed Banda's condition. The jury's resolution of this issue by choosing an earlier accrual date which is also supported by the evidence is not clearly wrong and manifestly unjust. Issue Three is overruled.

## INTEREST

In its final issue, Region XIX argues that the trial court erred by ordering interest in the amount of 7.25 percent be paid on the accrued benefits until paid. Banda's brief does not address this issue.

Section 408.064(a) provides:

> An order to pay income or death benefits accrued but unpaid must include interest on the amount of compensation due at the rate provided by Section 401.023.

TEX.LABOR CODE ANN. § 408.064(a)(West 2006). The trial court signed the judgment on May 6, 2008. At that time, the published interest rate for the period beginning on April 1, 2008 and ending on June 30, 2008 was 4.82 percent. Because we agree with Region XIX that the trial court erred by ordering interest in the amount of 7.25 percent, we sustain Issue Four. We reform the judgment to award interest of 4.82 percent on the accrued but unpaid lifetime income benefits and affirm the judgment as reformed.

February 9, 2011

_____
ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.