

# NUMBER 13-21-00361-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ACCIDENT FUND GENERAL
INSURANCE COMPANY,                          Appellant,

v.

RODRIGO MENDIOLA,                          Appellee.

## On appeal from the County Court at Law No. 3
## of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Longoria, Silva, and Peña
### Memorandum Opinion by Justice Peña

Appellant Accident Fund General Insurance Company (Accident Fund) appeals a judgment awarding appellee Rodrigo Mendiola lifetime income benefits under the Texas Workers' Compensation Act (TWCA). *See* TEX. LAB. CODE ANN. § 408.161. In five issues,

which we treat as three, Accident Fund argues that: (1) there is legally and factually insufficient evidence that Mendiola suffered the total loss of use of his left hand; (2) the trial court abused its discretion in admitting a treating physician's letter; and (3) the trial court erred in basing its judgment on its visual observations of Mendiola. We affirm.

## I.   BACKGROUND

Mendiola was driving a commercial truck hauling a tanker with hot asphalt when he got into an accident causing the truck to roll over. As a result, the asphalt entered the truck cabin causing second and third-degree burns to Mendiola's torso, as well as his left arm, hand, and leg. Mendiola received multiple skin grafts and surgeries, including an above-the-knee amputation of his left leg. Accident Fund, the workers' compensation insurer for Mendiola's employer, initially accepted his injury claim and paid his medical bills. After Mendiola reached maximum medical improvement, he filed a claim for lifetime income benefits based on the loss of one foot and the total and permanent loss of use of his left hand.[1] *See id.* § 408.161(a)(4), (b). Accident Fund disputed that Mendiola suffered the total and permanent loss of use of his left hand, and the matter proceeded to a contested case hearing before the Division of Workers' Compensation (DWC). The DWC concluded that Mendiola was not entitled to lifetime income benefits, and Mendiola sought judicial review of that decision.

The case was tried to the bench remotely via Zoom. Mendiola presented evidence that he sustained third-degree burns to the dorsal side of the left hand, palm, and fingers,

---

[1] Mendiola initially sought lifetime income benefits on the additional basis that he suffered third-degree burns covering at least forty percent of his body, but he later abandoned this claim. *See* TEX. LAB. CODE ANN. § 408.161(a)(7).

which required the removal of nonviable tissue and the placement of skin grafts. Because the left elbow was not healing, surgeons cut a flap of skin from the underside of the forearm and placed it on the elbow. This required the redirection of the radial artery, reducing blood circulation to the left hand by fifty percent.

Enrique Almaguer, M.D., Mendiola's retained expert in burn related injuries, reviewed Mendiola's medical records and personally examined Mendiola. Dr. Almaguer testified that the scarring and skin grafts to Mendiola's left hand affected the pliability of the skin and the movement of the wrist and hand. The related nerve disruption caused Mendiola to suffer diminished sensitivity and feeling. Dr. Almaguer also described Mendiola as having a webbing deformity restricting the separation of the fingers during active movement. Dr. Almaguer opined that Mendiola would not be able to perform work requiring the use of his left hand for an extended period of time. He explained that Mendiola's "hand [is] so frozen and so [e]ncased by scar that by looking at it and examining it, . . . there [is] no function of that hand." Dr. Almaguer stated that Mendiola's left hand could assist his other hand by pushing "with his arm and hand like a club." Dr. Almaguer said that Mendiola could use his left hand to assist in simple tasks such as pulling a chair.

Jennifer Pavlik, a vocational assessment expert, met with Mendiola and performed vocational testing. Based on her testing, Pavlik did not think Mendiola would be able to attend college for retraining. Pavlik also believed Mendiola was a weak candidate for clerical positions. Regarding tests that measure how quickly and precisely a person can use his hands, Mendiola scored less than the first percentile. Pavlik stated that Mendiola

has a low possibility of obtaining a job that requires the use of his left hand.

Mendiola testified that he did not complete high school but that he earned a GED. Mendiola worked as a laborer before becoming a truck driver. He does not know how to use a computer. Mendiola experiences pain, tingling, and numbness in his left hand, which disrupts his sleep. Mendiola's left hand tires quickly, and its condition worsens with use. He is prone to drop items held in his left hand. Mendiola stated he could no longer drive a commercial truck and that he cannot work in the heat for extended periods because he must keep his skin grafts and prosthetic leg covered. Mendiola can perform chores at home, although he performs many tasks with just his right hand. Parts of his left hand have no feeling, and he has burned his hand without realizing it. Mendiola can drive his personal truck with both hands, but his left hand goes numb if he drives for extended periods. Mendiola can operate a riding lawnmower, but he has pain while doing so, and he is unable to operate the lawnmower on consecutive days.

Richard Carr, a private investigator hired by Accident Fund, conducted surveillance of Mendiola performing various tasks at home involving some use of Mendiola's left hand, such as driving his personal truck and picking up wooden pallets.

Steven Doores, M.D., Accident Fund's retained expert, examined Mendiola. He testified that Mendiola's left hand retained sensation and a limited range of motion. Dr. Doores stated that Mendiola could not completely form a fist but that he retained some grip strength. Dr. Doores opined that Mendiola could return to work in some capacity, but he would have restrictions on the use of his left hand. Dr. Doores stated that Mendiola could perform work in a sedentary or light job classification.

4

Thomas Owens, Accident Fund's vocational rehabilitation expert, testified that Mendiola could take computer classes at a local community college to enhance his vocational opportunities. Owens stated that if he completed such a program, he could obtain a position using a one-handed computer keyboard.

Several witnesses referenced a letter written by Mendiola's treating physician, Danielle Melton, M.D., who did not testify at trial. Dr. Melton wrote that Mendiola "is unable to perform work in any capacity" due to his injuries.

The trial court entered a final judgment awarding lifetime income benefits to Mendiola based on the loss of one foot at or above the ankle and the total and permanent loss of use of one hand at or above the wrist. The trial court entered the following pertinent conclusion of law:

> A total loss of the use of a body part exists whenever by reason of injury, such body part:
>
>> no longer possesses any substantial utility as a member of the body, or
>>
>> the condition of the injured body part is such that the worker cannot procure and retain employment requiring the use of the body part.
>
> *Dallas Nat'l Ins. Co. v. De La Cruz*, 470 S.W.3d 56, 58 (Tex. 2015); *Ins. Co. of State of Pa. v. Muro*, 347 S.W.3d 268, 271–72 (Tex. 2011); *Travelers Ins. Co. v. Seabolt*, 361 S.W.2d 204, 206 (Tex. 1962).

The trial court's findings of fact were as follows:

> 1. Mendiola established by a preponderance of the evidence that the compensable injury of July 22, 2014 was the producing cause of the total and permanent loss of use of Mendiola's left hand at or above the wrist.
>
> 2. Mendiola established by a preponderance of the evidence that his left hand no longer possesses any substantial utility as a member of

5

his body and that his condition is such that he cannot get and keep employment requiring the use of the left hand as of July 22, 2014.

3. Mendiola's total and permanent loss of use of his left hand at or above the wrist began on July 22, 2014.

4. The compensable injury of July 22, 2014 was the producing cause of the total and permanent loss of use and loss of Mendiola's left foot at or above the ankle.

5. Mendiola's total and permanent loss of use of his left foot at or above the ankle began on July 22, 2014.

Accident Fund's objections to the findings of fact and conclusions of law were overruled by operation of law. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

In its first issue, Accident Fund challenges the legal and factual sufficiency of the evidence supporting the trial court's award of lifetime income benefits. It argues that the trial court applied the wrong definition in determining whether Mendiola suffered a total loss of use of his left hand. Accident Fund maintains that the evidence is legally and factually insufficient to support the trial court's total-loss-of-use finding when applying the correct definition. Alternatively, Accident Fund argues that even if the trial court employed the correct definition, the evidence is factually insufficient to show a total loss of use of the left hand.

### A. The TWCA

The TWCA provides a three-step administrative process with the DWC for resolving disputed issues between an injured worker and the insurance carrier. *El Paso Indep. Sch. Dist. v. Portillo*, 661 S.W.3d 512, 522 (Tex. App.—El Paso 2023, pet. denied). The parties first proceed to a benefit review conference, which is an informal dispute

resolution proceeding. TEX. LAB. CODE ANN. § 410.021. If unsuccessful, the parties next proceed to a contested case hearing before an administrative hearing officer. *Id.* §§ 410.151—169. A party can then appeal the hearing officer's decision to an appeals panel. *Id.* § 410.202. If a party is dissatisfied with a final DWC decision, then it may seek judicial review by filing a petition in the proper district court. *See id.* §§ 410.251; 410.252.

"Lifetime income is the greatest income benefit a worker can receive under the [TWCA]." *Muro*, 347 S.W.3d at 271. A person is entitled to lifetime benefits if, among other possibilities, he suffers the "loss of one foot at or above the ankle and the loss of one hand at or above the wrist[.]" TEX. LAB. CODE ANN. § 408.161(a)(4). The statute provides that "the total and permanent loss of use of a body part is the loss of that body part." *Id.* § 408.161(b).

## B. *Travelers Insurance Co. v. Seabolt*

Accident Fund argues the 1962 *Seabolt* standard for the total loss of use relied on by the trial court is no longer consistent with the statutory language given that the legislature overhauled the statute in 1989. *See Leordeanu v. Am. Prot. Ins. Co.*, 330 S.W.3d 239, 244 (Tex. 2010). Accident Fund maintains that the unambiguous statutory definition for the total loss of use of a hand means the *entire* loss of use of the hand's function.

Because Accident Fund is challenging the trial court's conclusion of law, we review the argument de novo. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). As set out above, the trial court concluded that:

> A total loss of the use of a body part exists whenever by reason of injury, such body part no longer possesses any substantial utility as a member of

7

the body, or the condition of the injured body part is such that the worker cannot procure and retain employment requiring the use of the body part.

This tracks the definition set out in *Seabolt*:

A total loss of the use of a member exists whenever by reason of injury, such member no longer possesses any substantial utility as a member of the body, or the condition of the injured member is such that the workman cannot procure and retain employment requiring the use of the member.

*Seabolt*, 361 S.W.2d at 206. The version of the statute reviewed in *Seabolt* used the term "member" instead of "body part," and it equated the loss of use of a member with its loss, as it does now. *Muro*, 347 S.W.3d at 272 (discussing *Seabolt*). In *Seabolt*, the court explained that the phrase "total loss of the use of a member" embraced two concepts, the first relating to the absence of any utility in the body part, and the second recognizing that the member might possess some utility yet "its condition be such as to prevent the workman from procuring and retaining employment requiring the use of the injured member." 361 S.W.2d at 205–06. In 2011, the Texas Supreme Court reviewed the *Seabolt* standard and applied it in determining whether there was sufficient evidence to show a total loss of use of a body part despite intervening legislative amendments.[2] *See Muro*, 347 S.W.3d at 276. The court continues to cite the *Seabolt* definition approvingly. *See De La Cruz*, 470 S.W.3d at 58. Our sister courts likewise continue to employ the *Seabolt* standard. *See Tex. Dep't of Ins., Workers' Comp. Div. v. De Los Santos*, 446 S.W.3d 800, 807 (Tex. App.—San Antonio 2014, no pet.); *Region XIX Serv. Ctr. v. Banda*,

---

[2] The former act provided that for purposes of lifetime benefits "the total and permanent loss of use of a member shall be considered to be the total and permanent loss of the member" and that the "total loss of use" of a member is "equivalent to" and is to "draw the same compensation" as the "total and permanent loss of such member." TEX. REV. CIV. STAT. ANN. art. 8306, §§ 10(b), 11a (repealed by Acts 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(7)–(9), 1989 TEX. GEN. LAWS 114).

8

343 S.W.3d 480, 485 (Tex. App.—El Paso 2011, pet. denied); *Pac. Employers Ins. Co. v. Dayton*, 958 S.W.2d 452, 459 (Tex. App.—Fort Worth 1997, pet. denied) (explicitly rejecting argument that the *Seabolt* definition for total loss of use was erroneous due to subsequent amendments to the TWCA); *see also City of Fort Worth v. Clark*, No. 01-18-00430-CV, 2019 WL 3783121, at *2 (Tex. App.—Houston [1st Dist.] Aug. 13, 2019, pet. denied) (mem. op.); *Menchaca v. Ins. Co. of State of Pa.*, No. 14-12-01158-CV, 2014 WL 871206, at *3 (Tex. App.—Houston [14th Dist.] Mar. 4, 2014, no pet.) (mem. op.).

Under the doctrine of vertical *stare decises*, we must follow the precedent of the Texas Supreme Court. *Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022); *see Lubbock County v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002) ("The court of appeals in this case followed established law. It is not the function of a court of appeals to abrogate or modify established precedent. That function lies solely with this Court.") (internal citation omitted). Accordingly, we decline Accident Fund's invitation to stray from established law, and we conclude the trial court did not err in applying the *Seabolt* definition for the "total loss of use" of the left hand. Based on this conclusion, we necessarily reject Accident Fund's sufficiency arguments based on the application of a different standard for "total loss of use."

## C. Factual Sufficiency

We now turn to Accident Fund's alternative argument that the evidence is factually insufficient to show a total loss of use under the *Seabolt* standard.

### 1. Standard of Review

"When a party attacks the factual sufficiency of the evidence pertaining to a finding

on which the party did not have the burden of proof, we may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Harris County. v. Coats*, 607 S.W.3d 359, 380–81 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (citing *Bennett v. Comm'n for Law. Discipline*, 489 S.W.3d 58, 66 (Tex. App.—Houston [14th Dist.] 2016, no pet.)). In reviewing factual sufficiency, we examine the entire record in a neutral light, "considering both the evidence in favor of, and contrary to, the challenged findings." *Altice v. Hernandez*, 668 S.W.3d 399, 413 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (first citing *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); then citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)).

"In a bench trial, the trial court acts as factfinder, and we accord its findings of fact the same weight as a jury's verdict." *Advance Tire & Wheels, LLC v. Enshikar*, 527 S.W.3d 476, 480 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Thompson v. Smith*, 483 S.W.3d 87, 93 (Tex. App.—Houston [1st Dist.] 2015, no pet.)). "[T]he trial court is the sole judge of the witnesses' credibility, and the court may choose to believe one witness over another." *Hall v. Lewis*, 639 S.W.3d 197, 205 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (quoting *Woods v. Kenner*, 501 S.W.3d 185, 196 (Tex. App.—Houston [1st Dist.] 2016, no pet.)).

## 2. Analysis

Accident Fund argues that there is factually insufficient evidence that: (1) Mendiola's left hand no longer possesses any substantial utility; or (2) Mendiola cannot get and keep employment requiring the use of his left hand. A claimant need only

prove one prong of the *Seabolt* test to show a total loss of use of a body part. *Banda*, 343 S.W.3d at 489; *Tex. Employer's Ins. Ass'n v. Sauceda*, 636 S.W.2d 494, 500 (Tex. App.—San Antonio 1982, no writ). Therefore, we first examine the evidence concerning the substantial utility prong of *Seabolt*.

Mendiola presented evidence that due to his burn injuries and resulting scarring, he lacks sensation and feeling in much of his hand. He also has reduced mobility and circulation in the hand. As a result of these conditions, Mendiola often drops objects, can only use his left hand as one would a club, and experiences pain after performing tasks such as driving his personal truck or lawnmower. The evidence showed that Mendiola used his left hand in a limited manner to assist in driving a truck and operating a lawnmower. Mendiola was also seen lifting a wooden palette, while using his left hand for support.

This evidence is very similar to cases in which courts have found factually sufficient evidence of a lack of substantial utility in one's hand. *See De Los Santos*, 446 S.W.3d at 808–09 (concluding there was factually sufficient evidence of no substantial utility in the hand where the worker had difficulty grasping things and had persistent pain); *Banda*, 343 S.W.3d at 488 (same where injured worker's hand tingles, experiences pain, and swells, making it difficult for her to grasp items, which she often drops); *El Paso Indep. Sch. Dist. v. Pabon*, 214 S.W.3d 37, 41–42 (Tex. App.—El Paso 2006, no pet.) (same where the worker could not grasp objects, had constant pain in her hands, and could not perform housework or other ordinary tasks). Nevertheless, Accident Fund argues that the evidence demonstrating Mendiola can use his left hand to do certain activities establishes

11

that the hand still possesses substantial utility. We disagree. Texas appellate courts have repeatedly held that the ability to perform certain tasks requiring only minimal assistance of the injured hand does not establish that the hand possesses substantial utility. *See De Los Santos*, 446 S.W.3d at 808 (rejecting argument that the ability to carry groceries or open doors undermined a finding that the hands lack substantial utility); *Banda*, 343 S.W.3d at 488 (same where the injured worker could hold a phone, write, comb her hair, and eat); *Pabon*, 214 S.W.3d at 41–42 (same where the worker could "drive a car, [and had] limited ability to perform other ordinary tasks such as housework, cooking, using a telephone, and writing").

Examining the entire record in a neutral light, we conclude that the trial court's finding that Mendiola's hand no longer possesses any substantial utility is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Coats*, 607 S.W.3d at 380–81. Therefore, the evidence is factually sufficient to support the trial court's judgment. *See id.* Having rejected each of Accident Fund's arguments, we overrule its first issue.

### III.    EVIDENTIARY RULING

In its second issue, Accident Fund argues that the trial court erred in admitting a letter from Mendiola's treating physician, Dr. Melton, because it was inadmissible hearsay and it was conclusory.

At a pretrial hearing, the trial court overruled Accident Fund's objections to the admissibility of Dr. Melton's letter. When trial commenced, Mendiola offered all of his exhibits for admission. The trial court admitted each exhibit except for those objected to

12

by Accident Fund, which the trial court "tabled." Several witnesses referenced Dr. Melton's opinion that Mendiola is unable to return to work without objection, but the letter itself was never offered into evidence. "A trial judge is presumed to consider only the testimony and exhibits properly in evidence." *Barnard v. Barnard*, 133 S.W.3d 782, 788 (Tex. App.—Fort Worth 2004, pet. denied) (collecting cases); *see also Lauterbach v. Lauterbach*, No. 13-21-00174-CV, 2022 WL 1787673, at *5 (Tex. App.—Corpus Christi–Edinburg June 2, 2022, no pet.) (mem. op.). There is no indication that the trial court considered Dr. Melton's letter in reaching its judgment, and we have not considered the letter in conducting our factual sufficiency review. Therefore, Accident Fund cannot demonstrate evidentiary error. *See Barnard*, 133 S.W.3d at 788. We overrule its second issue.

## IV.    TRIAL COURT'S OBSERVATIONS

In its third issue, Accident Fund argues that the trial court erred by rendering judgment based on its visual observations of Mendiola. Specifically, Accident Fund complains of the following language in the trial court's findings of fact and conclusions of law: "After considering the testimony and evidence admitted during trial, and this Court's visual observations of Mendiola and the physical condition of his left hand and its limited function, and arguments and authorities presented by counsel, the Court found in favor of Mendiola on the issue of [lifetime income benefits]."

In support of its argument, Accident Fund cites authority prohibiting a factfinder from conducting a personal investigation outside of open court. *See Conner v. Parker*, 181 S.W.2d 873, 874–75 (Tex. App.—Beaumont 1944, no writ) (holding that a trial court's

13

personal investigation of a disputed matter occurring outside of open court constituted reversible error); Tᴇx. R. Cɪᴠ. P. 226a (instructing jurors to not investigate the case on their own). However, there is no indication that the trial court conducted an independent investigation outside of open court. Furthermore, Accident Fund cites no authority prohibiting a factfinder from considering its in-court observation of witnesses. Rather, the law explicitly recognizes its ability to do so. In a bench trial, the trial judge observes the demeanor of the witnesses and weighs the evidence. *Malone v. PLH Grp., Inc.*, 570 S.W.3d 292, 295 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (citing *Masa Custom Homes, LLC v. Shahin*, 547 S.W.3d 332, 337 (Tex. App.—Dallas 2018, no pet.). "Drawing on these observations, the presiding judge, acting as factfinder, determines the facts from the disputed evidence." *Id.* We conclude that the trial court did not err in considering its own observations of Mendiola's injuries in reaching its judgment. We overrule Accident Fund's third issue.

## V. Cᴏɴᴄʟᴜsɪᴏɴ

We affirm the trial court's judgment.

L. ARON PEÑA JR.
Justice

Delivered and filed on the
12th day of October, 2023.

14