

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ANABELIA ALLEN, | § | No. 08-23-00169-CV |
| Appellant, | § | Appeal from the |
| v. | § | 143rd Judicial District Court |
| GYPSY JASSO, | § | of Reeves County, Texas |
| Appellee. | § | No. 16-12-21804-CVR |

**MEMORANDUM OPINION**

Following a bench trial, the trial court entered a final judgment denying Appellant Anabella Allen's trespass to try title claim and granted specific performance in favor of Appellee Gypsy Jasso. In two issues on appeal, Allen appeals the final judgment, asserting the trial court erred in finding that: (1) that the earnest money agreement was not enforceable due to fraud; and (2) Jasso was entitled to specific performance under an oral contract for the sale of the property at issue. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1996, Allen and her husband, Wayne Ned Allen, acquired the real property commonly known as 2125 Wyoming Street, Pecos, Texas 79772 (the Property). This suit followed a dispute over the sale of the Property by Allen to Jasso. The facts are heavily disputed.

On December 21, 2016, Allen filed a trespass to try title suit and negligence claim against Jasso. Allen alleged that Jasso was unlawfully interfering with her quiet possession of the Property. She asserted conflicting claims to the Property. On Allen's request, the trial court granted an ex parte restraining order enjoining Jasso from entering or damaging the Property. After a hearing on the temporary restraining order, the parties agreed to a mutual injunction barring each of them from entering the Property. Jasso filed her answer, asserting affirmative defenses and a counterclaim against Allen for breach of contract. Jasso sought specific performance of a 2003 oral contract in the form of delivery of the deed. Jasso also claimed fraudulent inducement with respect to a 2007 earnest money agreement. The case proceeded to a one-day bench trial held on October 5, 2017.

At the hearing, Allen testified that, in 2003, she entered into an agreement to lease the Property to Jasso. Allen next described that in 2007 she entered into discussions to sell Jasso the Property. They both signed a written agreement, an earnest money agreement, in which the sale price was listed at $35,000. The agreement included the terms that Jasso would make a down payment of $5,000 and the Allens would finance the remaining balance of $30, 000 at 10% interest. It further stated that Jasso was to make monthly payments of $400 per month on the balance owed. Allen testified that Jasso did not make the earnest money payment and only paid an initial payment of $1,000. Allen stated that Jasso never made any other payments under their agreement. Allen applied the $1,000 payment to Jasso's past due rent. She claimed that Jasso continued to owe rent. Allen attested she never entered into any other agreement to sell Jasso the Property and never signed a deed granting Jasso title to the Property. Due to the unpaid rent, Allen commenced proceedings to evict Jasso. Allen testified the estimated total of past-due rent amounted to nearly $36,400. Allen further testified that she paid the real estate taxes and insurance on the Property.

2

Jasso testified that, in December 2002, she noticed the Property with a for sale sign in the window with Allen's number listed. After she called the number provided, Jasso met with Allen who told her she could move into the Property in January. Jasso turned on the water, cleaned the house, and moved in the month of January. Jasso claimed Allen reduced their oral agreement to a handwritten agreement, stating a sale price of $25,000 reduced by a down payment of $2,000. The writing also stated the remaining balance would be paid at 10% interest for seven years with a monthly payment of $381.84. The writing had Allen's name and post office box number, her phone number, and the date "1/03." However, Jasso claimed that the writing described was not the actual contract of sale. Jasso testified that Allen did not sign a formal contract because she claimed she had to work things out with the previous owners.[1] Allen credited any work done to the Property towards the purchase price, and Jasso would email her receipts of things done to the Property. Jasso testified she was paying Allen $350 each month but would sometimes pay more depending on the repairs done to the Property. Jasso would deposit the money into Allen's bank account but would pay cash when Allen was in town.

Jasso testified that in 2007, Allen came to the Property and told Jasso she was going through a divorce. She told Jasso that she would deliver the deed to the Property if she were awarded the Property in the divorce, but there was a chance her husband would be awarded the Property. Jasso testified that Allen asked her to sign a new contract so that she could show the value of the Property was equal to the other marital properties owned by the parties. Jasso believed that, at this time, she had almost completely paid off the purchase of the Property. Jasso did not deny the terms of the earnest money agreement, nor did she contests that she had not fully

---

[1] During cross-examination of Allen, she testified that she sold the Property in 1998 and repurchased it in 2006 at a trustee's sale.

performed the payments under the agreement, but she argued she only signed it to help with Allen's divorce. Jasso claimed she had paid Allen $1,000 at that time to help with her divorce attorney's fees.

Jasso acknowledged that she never paid the taxes on the Property but explained that every time she would go to make the payment, the payment had already been made by Allen. She tried to transfer the account to her name but could not because she did not have a deed. Jasso sent Allen a certified letter requesting the deed for the Property and Allen responded with a phone call saying she would set up a meeting with West Texas Abstract to get the paperwork done, which never occurred.

Jasso attested that, in 2009 during the eviction proceeding, she provided copies of rent payments in the form of her direct deposit receipts to her then attorney, but never got her copies back. After the eviction hearing, Jasso testified she had a telephone conversation with Allen in which Allen said she would sign a deed and "stop all this nonsense" if Jasso gave her $10,000 in one lump sum. Jasso did not pay Allen the requested amount and Jasso moved out of the Property in 2014 when the ceiling fell due to termite damage.

At the end of the bench trial, the trial court took the issues under advisement. On June 9, 2023, the trial court entered a final judgment. In its judgment, the trial court found (1) Allen entered into the 2003 oral contract to sell the Property to Jasso; (2) Allen fraudulently induced Jasso into signing the 2007 earnest money agreement and the agreement was thus unenforceable; (3) all conditions precedent to completion of the 2003 contract for sale had occurred and Jasso fulfilled

4

her obligation to tender payment of the purchase price to Allen; (4) Allen failed to convey the Property to Jasso; and (5) Jasso was entitled to receive the deed to the Property from Allen.[2]

Allen requested findings of fact and conclusions of law and subsequently timely filed a notice of appeal. The trial court later entered findings of fact and conclusions of law. This appeal followed.

## II. STANDARD OF REVIEW

"Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict upon questions." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)); *Hernandez v. Hernandez*, 547 S.W.3d 898, 900 (Tex. App.—El Paso 2018, pet. denied). We review these findings for factual and legal sufficiency of the evidence under the same standards that are applied in reviewing evidence supporting a jury's finding. *El Paso Cnty. Hosp. Dist. v. Gilbert*, 64 S.W.3d 200, 203 (Tex. App.—El Paso 2001, pet. denied) (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)). When the appellate record contains a reporter's record, "findings of fact are not conclusive on appeal if the contrary is established as a matter of law or there is no evidence to support the findings." *Prudential Ins. Co. v. Durante*, 443 S.W.3d 499, 505 (Tex. App.—El Paso 2014, pet. denied).

In considering the factual sufficiency of the evidence to support a finding, we consider and weigh all the evidence, including any evidence contrary to the judgment. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Region XIX Serv. Ctr. v. Banda*, 343 S.W.3d 480, 489 (Tex. App.—El Paso 2011, pet. denied). We will set aside a finding only if it is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Ortiz v.*

---

[2] The trial court also found Allen had not pleaded, and had thus waived, the statute of frauds as an affirmative defense. Allen did not appeal this ruling.

*Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Pan Am. Operating v. Maud Smith Estate*, 409 S.W.3d 168, 172 (Tex. App.—El Paso 2013, pet. denied).

Under the legal sufficiency standard, we must credit evidence favorable to the judgment if a reasonable fact-finder could, disregard contrary evidence unless a reasonable fact-finder could not and reverse the fact-finder's determination only if the evidence presented in the trial court would not enable a reasonable and fair-minded fact-finder to reach the judgment under review. *Tx. Dept. of Transp. v. Flores*, 576 S.W.3d 782, 791 (Tex. App.—El Paso 2019, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). We sustain a legal sufficiency challenge if the record demonstrates (1) the complete absence of a vital fact; (2) that the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a scintilla; or (4) that the evidence conclusively establishes the opposite of a vital fact. *Id.* (citing *City of Keller*, 168 S.W.3d at 810). More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.* (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

We may not substitute our judgment for that of the fact-finder so long as the evidence falls within a zone of reasonable disagreement. *City of Keller*, 168 S.W.3d at 822; *City of El Paso v. Ramirez*, 633 S.W.3d 246, 253 (Tex. App.—El Paso 2021, pet. denied). We remain mindful that the fact-finder is "the sole judge of the credibility of the witnesses and the weight to be given to their testimony." *Banda*, 343 S.W.3d at 489 (citing *Golden Eagle Archery v. Jackson*, 116 S.W.3d 757, 761-62 (Tex. 2003)). We must review all evidence in a light favorable to the judgment and assume the trial court resolved all conflicts in accordance with its judgment. *City of Keller*, 168 S.W.3d at 820.

We review conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). "We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory supported by the evidence." *Hernandez*, 547 S.W.3d at 900 (citing *Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 547 (Tex. App.—Austin 1999, pet. denied)). "Further, if we determine that a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal." *Id.* (citing *BMC Software*, 83 S.W.3d at 794).

### III.  FRAUDULENT INDUCEMENT

In her first issue, Allen claims the trial court erred in finding that the 2007 earnest money agreement was unenforceable due to fraud. Specifically, Allen claims Jasso did not establish as a matter of law that she was fraudulently induced to sign the earnest money agreement because there was no evidence of a material misrepresentation and Jasso could not have justifiably relied on any representation by Allen.

"Fraudulent inducement is a 'species of common-law fraud' that 'arises only in the context of a contract." *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019). A fraudulent-inducement claimant must show, among other elements, that the defendant made a material misrepresentation knowingly or lacking knowledge of its truth and the claimant relied on the misrepresentation. *Id.* "[T]he 'misrepresentation' occurs when the defendant falsely promises to perform a future act while having no present intent to perform it." *Id.* "The plaintiff's 'reliance' on the false promise 'induces' the plaintiff to agree to a contract the plaintiff would not have agreed to if the defendant had not made the false promise." *Id.*

The trial court found that Allen falsely told Jasso that the 2007 earnest money agreement "was simply needed to help [Allen] complete her divorce proceedings and that a deed to the

7

property would follow." The evidence adduced during the bench trial sufficiently supports this finding. Jasso testified that Allen said that if she got the Property in the divorce, she would deliver the deed to Jasso. Allen told Jasso she needed to sign a new contract in order to prove an equal distribution of property in her divorce. Allen said as soon as the divorce was final, she could finalize the paperwork showing that Jasso had purchased the Property.

Allen argues Jasso either lied about her motivations for entering into the earnest money agreement or she knowingly perpetrated a fraud on the divorce court in an attempt to divest Allen's husband of any interest he may have had in the property. This assertion is not supported by the evidence. Further, the trial court explicitly found the testimony of Jasso was credible and Allen's testimony was not credible. *See Banda*, 343 S.W.3d at 489 (stating the fact-finder is "the sole judge of the credibility of the witnesses and the weight to be given to their testimony").

As to Jasso's justifiable reliance, the trial court found that "[Allen] intended [Jasso] to rely on this material misstatement and such reliance has worked to [Jasso's] detriment." The evidence at trial showed that Jasso believed Allen would sign over the deed to the Property upon her signing the earnest money agreement, which Jasso believed was needed to help Allen finish her divorce proceeding. The trial court was the sole judge of credibility, and we must assume it resolved the conflicting evidence in favor of its judgment. *See Banda*, 343 S.W.3d at 489; *City of Keller*, 168 S.W.3d at 820.

The trial court's findings are not so against the great weight and preponderance of the evidence as to be clearly wrong or unjust. *Ortiz*, 917 S.W.2d at 772. Additionally, there was more than a scintilla of evidence to support the trial court's conclusion that Jasso justifiably relied on Allen's misrepresentations. *See City of Keller*, 168 S.W.3d at 822. Accordingly, the evidence

8

presented at the bench trial was both legally and factually sufficient to support that Jasso was fraudulently induced to sign the earnest money agreement.

We overrule Allen's first issue.

## IV. SPECIFIC PERFORMANCE

In her second issue, Allen asserts the trial court erred by finding that Jasso was entitled to specific performance. She claims Jasso failed to establish that she tendered performance or was excused from performing her contractual obligations. Additionally, Allen claims Jasso failed to establish that the terms of the 2003 oral contract were clear enough that the parties knew their obligations.

A non-breaching party to a contract seeking the equitable remedy of specific performance of the contract "must plead and prove he was ready, willing, and able to timely perform his obligations under the contract." *DeGiuseppe v. Lawler*, 269 S.W.3d 588, 593 (Tex. 2008). In fact, generally speaking, a plaintiff seeking specific performance "must actually tender performance as a prerequisite to obtaining specific performance." *Id.* In the context of the sale of real property, a real estate purchaser who has tendered payment is entitled to specific performance when the contract is valid and enforceable, and the terms of the contract are sufficiently clear so that the parties know their obligations under the contract. *Abraham Inv Co. v. Payne Ranch, Inc.*, 968 S.W.2d 518, 527 (Tex. App.—Amarillo 1998, pet. denied). When the seller conspicuously breaches the contract, the purchaser need not tender payment, but must show she is ready and willing to perform her obligations and offer to perform her obligations within her pleadings. *Id.*

The trial court found that the 2003 contract provided that Allen would sell the Property for $25,000 in cash or credit from repairs to the Property. The trial court further found that Jasso made full payment on the Property and that she had completed all conditions precedent to the contract.

9

At trial, Jasso testified she entered into a contract to purchase the Property for $25,000 in December 2002; she was obligated to pay $2,000 as a downpayment; and the balance would be paid at a rate of $350 per month for six years. A writing in Allen's handwriting memorialized the terms of the oral contract for sale. This writing included notations of "Sale Price 25,000," "Less Down Payment -2000," and "23,000 @ 10% interest for 7 years 381.84/mo." Jasso also testified Allen orally agreed she would credit any work done to the house towards the purchase price, and Jasso's monthly payment would be adjusted depending on what repairs were completed. Allen went to Jasso's house in May 2007 saying she was going through a divorce, and if she got the house in the divorce, she would deliver Jasso a deed. Allen told Jasso she would finalize the paperwork showing Jasso had purchased the house as soon as the divorce was final—she would ensure that Jasso got the deed. Even though there was conflicting evidence regarding the amount of Jasso's monthly payment, the trial court resolved those conflicts in finding the terms of the contract.

The record also supports the trial court's conclusion that Jasso tendered payment. Jasso testified that she believed she had paid off the initial purchase price in mid-to-late 2008. Thereafter, Jasso demanded a deed from Allen. Allen requested proof of repairs and proof of payment and said she would deliver a deed if that documentation was provided. Jasso sent the documents to Allen via certified mail and produced the return receipt at trial.

Allen complains that Jasso did not offer supporting financial documents nor a total amount of payments she made toward the Property, but only testified that she "believed" she had paid off the initial purchase price. Allen notes Jasso's only exhibits supporting her payments were one bank deposit slip in the amount of $350 with the notation, "The total A/C repairs $645. I will give you the extra $55 on 8-15-08 plus August rent." Finally, Allen complains that even though Jasso

10

testified the payment period was six years, despite any receipts showing overpayment or advance payment, Jasso testified she paid off the premises several months early. Even so, Allen herself testified at the temporary injunction hearing that Jasso was to pay $350 per month. Again, we must defer to the trial court's explicit finding that Jasso's testimony was credible, and Allen's was not.

The trial court's findings are not so against the great weight and preponderance of the evidence as to be clearly wrong or unjust and amount to more than a scintilla of evidence to support the trial court's finding on specific performance. *See Ortiz*, 917 S.W.2d at 772; *City of Keller*, 168 S.W.3d at 822. Accordingly, the evidence presented at the bench trial was legally and factually sufficient to support the trial court's conclusion that Jasso tendered performance of the contract and was entitled to specific performance. *See Abraham Inv.*, 968 S.W.2d at 527.

We overrule Allen's second issue.

## V. CONCLUSION

We affirm.

GINA M. PALAFOX, Justice

August 12, 2024

Before Alley, C.J., Palafox and Soto, JJ.

11